IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| The City of Dalton, Georgia, acting through its Board of Water, Light and Sinking Fund Commissioners, d/b/a Dalton Utilities,<br><br>    Plaintiff,<br><br>  v.<br><br>3M Company; Daikin America, Inc.; EIDP, Inc. f/k/a E.I. DuPont de Nemours and Company; The Chemours Company; INV Performance Surfaces, LLC; Aladdin Manufacturing Corporation; Shaw Industries Group, Inc.; Shaw Industries, Inc.; and DOES 1-10,<br><br>    Defendants. | Civil No. 4:24-cv-00293-WMR |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT 3M'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................1

BACKGROUND ..................................................................................2

LEGAL STANDARD ...........................................................................4

ARGUMENT .......................................................................................5

   I.      The CERCLA Claims Fail as a Matter of Law (Counts I and II). ........5

     A.     3M Did Not "Arrange For" the Disposal of PFAS. .............................6

     B.     No Claim Under Section 107(a) Has Accrued. ..................................13

     C.     The City Fails to Allege That It Incurred Costs Consistent with the National Contingency Plan. ...............................................................15

   II.     The City's Common Law and Strict Liability Claims Are Time Barred. ...............................................................................................18

     A.     The City's Negligence and Strict Liability Claims Are Time Barred. .........................................................................................................19

     B.     The City's Nuisance and Trespass Claims Are Time Barred. .........20

   III.    The City's Common Law and Strict Liability Claims Fail for Lack of Proximate Cause. .............................................................................22

   IV.    The City Fails to Plausibly Allege Trespass (Count V). ......................25

   V.     The GWQCA Claim Should Be Dismissed for Impermissible Shotgun Pleading (Count VII). ........................................................................26

   VI.    The Complaint Fails to Allege a Violation of The Sewer Use Rules and Regulations (Count VIII). ...........................................................27

   VII.   The City Fails to Plausibly Allege Its Strict Liability Claims (Counts IX and X). ........................................................................................29

     A.     The City's Strict Liability Claims are Barred by the Statute of Repose. ...............................................................................................29

     B.     The City Fails to State a Claim for Design Defect. ...........................30

     C.     The City Fails to Plausibly Allege a Failure to Warn Claim. ..........32

   VIII.  Any Claim Predicated on 3M's Lab Should be Dismissed. .................35

   IX.    The City Fails to Allege Claims for Punitive Damages and Litigation Expenses (Counts VI and XI). ............................................................35

CONCLUSION ...................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexander v. Hulsey Env't Servs., Inc.*,
  702 S.E.2d 435 (Ga. Ct. App. 2010) ........................................................ 24, 25

*Allison v. McGhan Med. Corp.*,
  184 F.3d 1300 (11th Cir. 1999) ....................................................................29

*Am. Premier Underwriters v. Gen. Elec. Co.*,
  14 F.4th 560 (6th Cir. 2021) .........................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................... 4, 5, 18, 21

*AVCO Corp. v. Precision Air Parts, Inc.*,
  676 F.2d 494 (11th Cir. 1982) .....................................................................19

*Banks v. ICI Ams., Inc.*,
  450 S.E.2d 671 (Ga. 1994) ...........................................................................31

*Bd. of Tr. of Leland Stanford Junior Univ. v. Agilent Techs., Inc.*,
  573 F. Supp. 3d 1371 (N.D. Cal. 2021) ........................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................4

*Best Jewelry Mfg. Co. v. Reed Elsevier Inc.*,
  780 S.E.2d 689 (Ga. Ct. App. 2015) ............................................................27

*Blasland, Bouck & Lee, Inc. v. City of N. Miami*,
  283 F.3d 1286 (11th Cir. 2002) ...............................................................5, 16

*Blondell v. Courtney Station 300 LLC*,
  865 S.E.2d 589 (Ga. Ct. App. 2021) ............................................................22

*Bonard v. Lowe's Home Ctrs., Inc.*,
  479 S.E.2d 784 (Ga. Ct. App. 1996) ...................................................... 22, 23

*Brazil v. Janssen Res. & Dev. LLC*,
  249 F. Supp. 3d 1321 (N.D. Ga. 2016) .........................................................31

*Briggs & Stratton Corp. v. Concrete Sales & Servs., Inc.*,
   29 F. Supp. 2d 1377 (M.D. Ga. 1998) ...........................................20

*Briggs & Stratton Corp. v. Concrete Sales & Servs., Inc.*,
   971 F. Supp 566 (M.D. Ga. 1997)...................................................26

*Briggs & Stratton Corp. v. Concrete Sales & Servs., Inc.*,
   990 F. Supp. 1473 (M.D. Ga. 1998)................................................19

*Burlington N. & Santa Fe Ry. Co. v. United States*,
   556 U.S. 599 (2009) ........................................................ 6, 9, 10, 12

*California ex rel. Cal. Dep't of Toxic Substances Control v. Neville
   Chem. Co.*,
   358 F.3d 661 (9th Cir. 2004).........................................................14

*Campbell v. Altec Indus., Inc.*,
   707 S.E.2d 48 (Ga. 2011) ..............................................................30

*Carson Harbor Village v. County of Los Angeles*,
   433 F.3d 1260 (9th Cir. 2006) ................................................ 15, 17

*Carter v. Progressive Mountain Ins.*,
   761 S.E.2d 261 (Ga. 2014) ............................................................35

*Celanese Corp. v. Martin K. Eby Constr. Co.*,
   620 F.3d 529 (5th Cir. 2010)..........................................................10

*Certainteed Corp. v. Fletcher*,
   794 S.E.2d 641 (Ga. 2016) ...................................................... 32, 33

*Chi. Hardware & Fixture Co. v. Letterman*,
   510 S.E.2d 875 (Ga. Ct. App. 1999) ..............................................22

*Chrysler Corp. v. Batten*,
   450 S.E.2d 208 (Ga. 1994) ............................................................29

*City of Atlanta v. Carlisle*,
   858 S.E.2d 543 (Ga. Ct. App. 2021) ..............................................20

*City of Colton v. Am. Promotional Events, Inc.-W.*,
   614 F.3d 998 (9th Cir. 2010)............................................................6

*City of Rialto v. U.S. Dep't of Def.*,
2007 WL 9723250 (C.D. Cal. June 27, 2007) ................................................ 15

*Colormatch Exteriors, Inc. v. Hickey*,
569 S.E.2d 495 (Ga. 2002) ............................................................................... 19

*Concrete Sales & Servs., Inc. v. Blue Bird Body Co.*,
211 F.3d 1333 (11th Cir. 2000) ........................................................................ 7

*Consolidation Coal Co. v. Ga. Power Co.*,
781 F.3d 129 (4th Cir. 2015) ....................................................................... 9, 11

*Crutchfield Props., LLLP v. Ashgan Prods., LLC*,
2019 WL 12762944 (N.D. Ga. May 19, 2019) .................................................. 7

*Davis Bros., Inc. v. Thornton Oil Co.*,
12 F. Supp. 2d 1333 (M.D. Ga. 1998) ...................................................... 20, 21

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
87 F.4th 315 (6th Cir. 2023) ............................................................................ 33

*Edwards v. Campbell*,
792 S.E.2d 142 (Ga. Ct. App. 2016) ................................................................ 23

*Fincher v. Monroe Cnty. Bd. of Comm'rs*,
2019 WL 510448 (M.D. Ga. Feb. 8, 2019) ...................................................... 31

*Francis v. Teague*,
2009 WL 10665635 (N.D. Ga. Feb. 13, 2009) ................................................ 25

*Ga.-Pac. Consumer Prods., LP v. Ratner*,
812 S.E.2d 120 (Ga. Ct. App. 2018) .......................................................... 25, 26

*Gen. Elec. Co. v. AAMCO Transmissions, Inc.*,
962 F.2d 281 (2d Cir. 1992) ............................................................................ 11

*Goodson v. Bos. Sci. Corp.*,
2011 WL 6840593 (N.D. Ga. Dec. 29, 2011) ............................................ 30, 31

*Green Meadows Hous. Partners, LP v. Macon-Bibb County*,
906 S.E.2d 430 (Ga. Ct. App. 2024) ................................................................ 22

*Hinds Invs., L.P. v. Team Enters., Inc.*,
2010 WL 1663986 (E.D. Cal. Apr. 22, 2010) ........................................... 6, 7, 8

*Jenkins v. Meta Platforms, Inc.*,
  2023 WL 4306908 (M.D. Ga. June 30, 2023) ................................................27

*Jones v. NordicTrack, Inc.*,
  550 S.E.2d 101 (Ga. 2001) ..............................................................................31

*Karekezi v. Pinnacle Sys., Inc.*,
  885 S.E.2d 235 (Ga. Ct. App. 2023) ..............................................................23

*Keener v. Addis*,
  5 S.E.2d 695 (Ga. Ct. App. 1939) ...................................................................25

*Liberty County v. Eller*,
  761 S.E.2d 164 (Ga. Ct. App. 2014) ...............................................................21

*Lore v. Suwanee Creek Homeowners Ass'n, Inc.*,
  699 S.E.2d 332 (Ga. Ct. App. 2010) ....................................................... 22, 35

*Maynard v. Snapchat, Inc.*,
  870 S.E.2d 739 (Ga. 2022) ..............................................................................23

*Miller v. D.C. Water & Sewer Auth.*,
  790 F. App'x 218 (D.C. Cir. 2019) .......................................................... 15, 17

*Moore v. Mylan Inc.*,
  840 F. Supp. 2d 1337 (N.D. Ga. 2012) ...........................................................31

*Morrison Enters. v. McShares, Inc.*,
  302 F.3d 1127 (10th Cir. 2002) ......................................................................16

*Murphy v. CitiMortgage, Inc.*,
  2018 WL 10333829 (N.D. Ga. Jan. 31, 2018) ...............................................20

*NCR Corp. v. George A. Whiting Paper Co.*,
  768 F.3d 682 (7th Cir. 2014) ............................................................... 7, 10, 11

*Page v. Braddy*,
  564 S.E.2d 538 (Ga. Ct. App. 2002) ..............................................................26

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  572 U.S. 663 (2014) .........................................................................................13

*Popham v. Landmark Am. Ins. Co.*,
  798 S.E.2d 257 (Ga. Ct. App. 2017) ..............................................................35

*Pub. Serv. Co. of Colo. v. Gates Rubber Co.*,
175 F.3d 1177 (10th Cir. 1999) ............................................................ 13, 14

*Reg'l Airport Auth. of Louisville v. LFG, LLC*,
460 F.3d 697 (6th Cir. 2006)...............................................................17

*Reichwaldt v. Gen. Motors LLC*,
304 F. Supp. 3d 1312 (N.D. Ga. 2018)...................................... 33, 34

*Ron D. Beal, P.A. v. Hartford Fire Ins. Co.*,
2020 WL 13587898 (N.D. Ga. Dec. 1, 2020) ................................19

*Rouse v. City of Atlanta*,
839 S.E.2d 8 (Ga. Ct. App. 2020) ........................................... 25, 26

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
99 F.4th 458 (9th Cir. 2024) ...............................................................13

*Schaefer v. Town of Victor*,
457 F.3d 188 (2d Cir. 2006) ...............................................................14

*Schmidt v. C.R. Bard, Inc.*,
2014 WL 5149175 (S.D. Ga. Oct. 14, 2014)...................................31

*Smith v. Branch*,
487 S.E.2d 35 (Ga. Ct. App. 1997) ................................................21

*Southfund Partners III v. Sears, Roebuck & Co.*,
57 F. Supp. 2d 1369 (N.D. Ga. 1999) ....................... 15, 16, 17, 18

*Team Enters., LLC v. W. Inv. Real Est. Tr.*,
647 F.3d 901 (9th Cir. 2011)....................................... 7, 8, 9, 10, 11

*Terry v. Catherall*,
789 S.E.2d 218 (Ga. Ct. App. 2016) ..............................................23

*Thomas v. Trinity Indus., Inc.*,
2020 WL 13544344 (N.D. Ga. Aug. 19, 2020)...............................30

*Travelers Home & Marine Ins. Co. v. Clawfoot Supply, LLC*,
2016 WL 9450453 (N.D. Ga. May 11, 2016) ........................... 32, 34

*Tucker v. S. Wood Piedmont Co.*,
28 F.3d 1089 (11th Cir. 1994) ...........................................................19

*Union Pac. R.R. Co. v. Reilly Indus., Inc.*,
    215 F.3d 830 (8th Cir. 2000)..................................................... 15, 17

*United States v. Atl. Rsch. Corp.*,
    551 U.S. 128 (2007) ....................................................................5

*United States v. Middleton*,
    276 F. Supp. 3d 1352 (M.D. Ga. 2017) .............................. 13, 14

*United States v. Navistar Int'l Transp. Corp.*,
    152 F.3d 702 (7th Cir. 1998)......................................................14

*Vine St. LLC v. Borg Warner Corp.*,
    776 F.3d 312 (5th Cir. 2015).....................................................7, 9

*Wells Fargo Bank, N.A. v. Renz*,
    2011 WL 97649 (N.D. Cal. Jan. 12, 2011).................................12

*Wheat v. Sofamor, S.N.C.*,
    46 F. Supp. 2d 1351 (N.D. Ga. 1999) .......................................30

*Wilks v. Overall Constr. Inc.*,
    674 S.E.2d 320 (Ga. Ct. App. 2009) .........................................19

*Woods v. A.R.E. Accessories, LLC*,
    815 S.E.2d 205 (Ga. Ct. App. 2018) .........................................31

*Wright v. Robinson*,
    426 S.E.2d 870 (Ga. 1993) ........................................................30

*Yearty v. Scott Holder Enters., Inc.*,
    824 S.E.2d 817 (Ga. Ct. App. 2019) .........................................23

*Yeyille v. Miami Dade Cnty. Pub. Schs.*,
    643 F. App'x 882 (11th Cir. 2016)............................................27

## Statutes

42 U.S.C. § 9601(24) ................................................................14

42 U.S.C. § 9607(a) ...............................................................5, 6

42 U.S.C. § 9613(g)(2) .................................................. 13, 14, 15

42 U.S.C. § 9658(b)(4) ..............................................................19

O.C.G.A. § 9-3-30(a) ...................................................18

O.C.G.A. § 51-1-11(b)(2) ..........................................29

## Regulations

40 C.F.R., Part 300 ..................................................15

40 C.F.R. § 300.700(c) ........................................ 16, 17

## INTRODUCTION

In a sprawling and scattershot complaint, the City of Dalton (the "City") blames an array of companies for the alleged discharge by carpet manufacturers of wastewater containing PFAS, which the City claims damaged its property. But the City's central claim under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") fails on its face against 3M because the City cannot and does not allege that 3M intentionally arranged for the disposal of wastewater into the City's property. The City also prematurely invokes CERCLA to force 3M to contribute to a remedial plan before the City even adopts such a plan, much less a plan that satisfies the legal requirements. CERCLA does not authorize the City's suit.

The City's state law claims are also meritless. The City *concedes* that it became aware of the presence of PFAS over 15 years ago, in 2009, so its common law and strict liability claims are time-barred. Those claims also fail for lack of proximate cause, as they largely rest on the independent intervening acts of the carpet manufacturers. And the City fails to allege the core element of trespass—that 3M intentionally invaded any property owned by the City.

The City also advances a conclusory and formulaic claim under the Georgia Water Quality Control Act, but fails to allege *facts* rather than simply reciting the elements of its claim. And its claim under the Sewer Use Rules and Regulations fails to plead the basis for a private right of action, much less

an actual violation. Finally, neither strict liability claim is adequately pled. Both are barred by the statute of repose, and the City alleges neither an actual defect nor a safer alternative design. And the failure to warn claim is too indirect, blaming 3M for not warning carpet manufacturers without any plausible allegations that such warnings would have affected their decisions.

Because the City has failed to state a claim on any of the counts in the Complaint, its derivative claims for punitive damages and litigation expenses also fail. The Court should dismiss the Complaint in its entirety.

## BACKGROUND[1]

The City is a Georgia municipal corporation. Compl. ¶ 19. It operates the Dalton Utilities Publicly Owned Treatment Works ("POTW"), a municipal utility that collects and treats wastewater from household, commercial, and industrial users. *Id.* ¶¶ 2, 108–09. The POTW includes three treatment plants that process wastewater before it is land-applied to the Land Application System for processing and disposal. *Id.* ¶¶ 2, 107, 110. These operations are governed by the Land Application System Permit, which requires the POTW to pretreat and monitor wastewater for specific constituents. *Id.* ¶¶ 112–20.

This case concerns the alleged PFAS contamination of the POTW. Compl. ¶ 1. According to the City, PFAS are a group of "highly useful and

---

[1] 3M disputes the City's allegations in the Complaint but accepts the well-pleaded factual allegations as true solely for purposes of this Motion.

commercially valuable" fluorinated organic chemicals that are used in various industrial and commercial products. *Id.* ¶¶ 33–34, 48. Beginning in the 1970s, Defendants 3M, DuPont, Chemours, Daikin, and Invista (the "PFAS Manufacturers") manufactured and sold carpet-treatment products containing PFAS to Defendants Aladdin and Shaw (the "Carpet Manufacturers"). *Id.* ¶¶ 36, 42–47, 76. The City alleges the Carpet Manufacturers used the PFAS products for decades at their Dalton-area facilities to manufacture "highly profitable stain- and soil-resistant carpets." *Id.* ¶¶ 42, 78–82. The City also alleges that the PFAS application process generated contaminated wastewater that was subsequently discharged to the POTW for disposal. *Id.* ¶¶ 83–91.

The City says it discovered "elevated levels" of PFAS in the wastewater entering the POTW in 2009. Compl. ¶¶ 124–27. Dalton Utilities shared the sampling data with EPA and the Georgia Environmental Protection Division ("EPD") in 2009, but neither took any action. *Id.* ¶¶ 126–31. The City does not and cannot allege it took any action over the next 15 years. *Id.* ¶ 128.

In April 2024, EPA finalized a National Primary Drinking Water Regulation establishing Maximum Contaminant Levels for six PFAS compounds. Compl. ¶ 10. One month later, EPA also finalized a regulation designating two types of PFAS as hazardous substances under CERCLA. *Id.* ¶ 12. The City alleges that, as a result, it must make "significant and costly changes to the POTW to remedy" existing PFAS contamination and prevent

future contamination. *Id.* ¶ 13. The City does not allege that it has to date undertaken any remediation efforts. Rather, the City alleges it has "engaged consultants" to "investigate . . . potential remedial options." *Id.* ¶¶ 132–33.

The City filed its Complaint in December 2024, alleging 11 causes of action. Against all Defendants, the City alleges: joint and several liability under CERCLA for the City's response costs (Counts I and II), Compl. ¶¶ 135–49; negligence (Count III), *id.* ¶¶ 150–58; nuisance (Count IV), *id.* ¶¶ 159–65; trespass (Count V), *id.* ¶¶ 166–73; violation of the Georgia Water Quality Control Act (Count VII), *id.* ¶¶ 182–91; and claims for punitive damages (Count VI), *id.* ¶¶ 174–81, and litigation expenses (Count XI), *id.* ¶¶ 223–26. The City also alleges claims against 3M, Aladdin, Shaw, DuPont, and Invista for allegedly discharging PFAS-containing wastewater to the POTW in violation of its Sewer Use Rules and Regulations (Count VIII). *Id.* ¶¶ 192–203. And the City alleges two claims against 3M, DuPont, Daikin, and Invista for defective design (Count IX) and failure to warn (Count X). *Id.* ¶¶ 204–22.

## LEGAL STANDARD

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) where a plaintiff fails "to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or a claim that fails to rise "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

## I.    The CERCLA Claims Fail as a Matter of Law (Counts I and II).

The City contends that Defendants are jointly and severally liable under CERCLA § 107(a) (46 U.S.C. § 9607(a)) for the response costs the City has incurred and will incur due to purported disposal of PFAS into the POTW (Count I), and that it is entitled to a corresponding declaratory judgment under CERCLA § 113(g)(2) (Count II). Compl. ¶¶ 135–49. The City's CERCLA claims against 3M fail as a matter of law and should be dismissed.

Section 107(a) of CERCLA permits private parties to "recover expenses associated with cleaning up contaminated sites." *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 131 (2007). To state a claim, a plaintiff must plausibly allege that (1) the site is a CERCLA "facility"; (2) there has been a "release" or "threatened release" of a "hazardous substance"; (3) the release or threatened release caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan"; and (4) the defendant is in one of the classes of potentially responsible parties ("PRPs"). 42 U.S.C. § 9607(a); *see, e.g.*, *Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1302 (11th Cir. 2002). The City alleges that 3M is a PRP because it "arranged for

disposal" of a hazardous substance. 42 U.S.C. § 9607(a)(3); *see* Compl. ¶ 5.

The City does not state a claim under section 107(a) against 3M. It has not plausibly alleged that 3M "arranged" for the disposal of PFAS. The City also has not initiated physical on-site construction to remediate any claimed harm nor adopted a national contingency plan. Because "declaratory relief is available only if liability for past costs has been established under section 107," the declaratory judgment claim fails too. *City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1007–08 (9th Cir. 2010); *Hinds Invs., L.P. v. Team Enters., Inc.*, 2010 WL 1663986, at *10 (E.D. Cal. Apr. 22, 2010), *aff'd sub nom. Hinds Invs., L.P. v. Angioli*, 445 F. App'x 921 (9th Cir. 2011).

## A. 3M Did Not "Arrange For" the Disposal of PFAS.

The City alleges 3M is liable under CERCLA because it "arranged for" the disposal of PFAS. Compl. ¶¶ 5, 136–37; *see* 42 U.S.C. § 9607(a)(3). The statute does not define "arrange[] for," but the Supreme Court has held that it "implies action directed to a specific purpose." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 610–11 (2009). Thus, an entity is an arranger only "when it takes intentional steps to dispose of a hazardous substance." *Id.* at 611. While in many cases "the determination whether an entity is an arranger requires a fact-intensive inquiry," *id.* at 610, courts conclude that a defendant cannot qualify as an arranger as a matter of law. *E.g.*, *Hinds*, 2010 WL 1663986, at *5–10 (finding no arranger liability at the

motion to dismiss stage); *Crutchfield Props., LLLP v. Ashgan Prods., LLC*, 2019 WL 12762944, at *4–5 (N.D. Ga. May 19, 2019) (Ray, J.) (granting summary judgment to defendant on arranger liability).

Here, the City appears to contend that 3M arranged for the disposal of the PFAS-laden wastewater generated at (1) the Carpet Manufacturers' facilities and (2) 3M's lab in Dalton. Compl. ¶¶ 5, 136–39. Both theories fail.

### 1.    3M Did Not Arrange for the Disposal of Any PFAS-Laden Wastewater at the Carpet Manufacturers' Facilities.

The City's CERCLA claim relating to the alleged discharge of the Carpet Manufacturers' industrial wastewater fails for three independent reasons.

*First*, "a party is not liable as an arranger if it [was] engaged in the mere sale of a useful product that [wa]s not properly considered to be 'waste'" at the time of sale. *Vine St. LLC v. Borg Warner Corp.*, 776 F.3d 312, 317 (5th Cir. 2015); *accord Concrete Sales & Servs., Inc. v. Blue Bird Body Co.*, 211 F.3d 1333, 1336–37 (11th Cir. 2000) (considering "whether a sale involved the transfer of a 'useful' or 'waste' product"). Under the "useful product doctrine," "a seller of a useful product [may not be] subject to arranger liability, even [if] the product itself is a hazardous substance that requires future disposal." *Team Enters., LLC v. W. Inv. Real Est. Tr.*, 647 F.3d 901, 908 (9th Cir. 2011); *see also NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 706 (7th Cir. 2014) ("[a] company using hazardous materials to manufacture a 'new and

useful product' that it then sells . . . , even with knowledge that some of that product will be discarded, is not an arranger").

The doctrine reflects the "general presumption" that "people sell useful products for legitimate business purposes, not for the purpose of disposing of waste." *Team Enters.*, 647 F.3d at 908–09. "It would be odd, for example, to say that an auto parts store sells motor oil to car owners *for the purpose* of disposing of hazardous waste." *Id.* at 908. To overcome the doctrine, a plaintiff must allege and show that "the substance involved in the transaction has the characteristic of waste at the time it is delivered to another party." *Id.*

The Complaint affirmatively *alleges* that 3M sold a new and useful product—not waste—to the Carpet Manufacturers. The City asserts that "PFAS was an important and highly profitable product for the PFAS Manufacturing Defendants, and for decades it was an integral part of the carpet and flooring industry allowing the Carpet Manufacturing Defendants to sell highly profitable stain- and soil-resistant carpets." Compl. ¶¶ 9, 42. Thus, the City concedes that "PFAS proved to be a highly *useful* and commercially *valuable* product for 3M." *Id.* ¶ 48 (emphases added).

Because the City alleges that 3M sold a highly useful product from which it derived significant value, and CERCLA is not intended "to target legitimate manufacturers or sellers of useful products," *Hinds*, 2010 WL 1663986, at *7, 3M cannot be deemed an arranger as a matter of law, even if its products

contained an allegedly hazardous substance that the Carpet Manufacturers later discharged into the POTW. *E.g.*, *Am. Premier Underwriters v. Gen. Elec. Co.*, 14 F.4th 560, 572 (6th Cir. 2021) (no arranger liability "when disposal occurs as a peripheral result of the legitimate sale of an unused, useful product even if a seller knows its product will ultimately be leaked, spilled, dumped, or otherwise discarded"); *Consolidation Coal Co. v. Ga. Power Co.*, 781 F.3d 129, 150–53 (4th Cir. 2015) (seller of product not an arranger where it "legitimately sought to sell" the product "to its greatest commercial advantage," and both it and eventual purchaser "profited" from the sale and resale, respectively).

*Second*, "CERCLA arranger liability is premised upon an intentional act directed toward the disposal of hazardous waste," *Vine St.*, 776 F.3d at 317, but here the City fails to allege that 3M took "*intentional steps* to dispose of a hazardous substance," *Burlington N.*, 556 U.S. at 611 (emphasis added). The City alleges that 3M committed the "intentional act[] of selling" PFAS to the Carpet Manufacturers while "knowing" their processes would result in PFAS-laden wastewater being discharged to the POTW. Compl. ¶¶ 97–101, 169.

These allegations are not sufficient. 3M's "mere knowledge" that the Carpet Manufacturers would dispose of PFAS after 3M sold its products to them is insufficient to create arranger liability. *Burlington N.*, 556 U.S. at 613; *see also Team Enters.*, 647 F.3d at 908 ("actions taken with the mere *knowledge*" that a hazardous substance will be disposed in the "future"

insufficient to create arranger liability). If a seller could be an arranger based only on "intentionally getting rid of a product and knowing that some part of it will be disposed later," arranger liability "would sweep almost any entity that ever touches the product" under its scope. *NCR Corp.*, 768 F.3d at 706. To avoid expanding arranger liability beyond its textual limits, courts have held that a seller's "conscious disregard," *Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 533 (5th Cir. 2010), and "failure to warn" about "the risk of contamination that would result from improper disposal," *Team Enters.*, 647 F.3d at 909, cannot create arranger liability as a matter of law.

In the absence of any facts suggesting intent to dispose of waste, the City alleges only that 3M advised the Carpet Manufacturers that PFAS "should be disposed of through incineration or at landfills capable of handling hazardous chemicals, not discharged into water bodies." Compl. ¶¶ 99–101. But those facts *negate* any intent to dispose of hazardous wastes. In *Burlington Northern*, for example, the Supreme Court held that Shell could not be an arranger even though it delivered pesticides to the site "under conditions it knew would result in the spilling of a portion of the hazardous substance," where, as here, Shell "encourage[d] its distributors to *reduce* the likelihood of . . . spills" and provided "safety manuals" explaining how to handle the pesticides. 556 U.S. at 612–13. The same reasoning applies here.

*Third*, courts do not "impose[] arranger liability on a party who . . . never

had any authority to control . . . the hazardous materials at issue." *Team Enters.*, 647 F.3d at 910; *see, e.g.*, *NCR Corp.*, 768 F.3d at 706 ("lack of control is a good reason to find [defendant] was not arranging for disposal"); *Gen. Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 286–87 (2d Cir. 1992) (no arranger liability for "oil companies [that] had no obligation to exercise control over the manner in which their dealers disposed of waste motor oil").

Here, the City does not allege that 3M had the "legal authority to direct" the Carpet Manufacturers' alleged disposal of PFAS. *Team Enters.*, 647 F.3d at 910. Nor could it, since the Carpet Manufacturers could have disposed of 3M's PFAS products however they wanted to after the products were sold and in the Carpet Manufacturers' possession. Thus, "[a]ny disposal of [PFAS] occurred only as a result of [the Carpet Manufacturers'] later business judgments, not any implicit agreement or understanding" between them and 3M "at the time of [sale]." *Consolidated Coal*, 781 F.3d at 152; *see also NCR Corp.*, 768 F.3d at 706 (no arranger liability where "what happened to the [pollutant] . . . was completely out of the seller's hands" after purchase).

## 2.    3M Did Not Arrange for the Disposal of Any PFAS-Laden Wastewater at Its Lab in Dalton.

Although the City overwhelmingly focuses on its allegation of discharge by Carpet Manufacturers, it alleges in passing that 3M operated a lab that discharged PFAS-laden wastewater to the POTW. Compl. ¶¶ 95–96. But even

as to this lab, the City does not allege that 3M took "intentional steps" or "planned for" PFAS-laden wastewater to be discharged from its lab to the POTW. *Burlington N.*, 556 U.S. at 611–12.

A defendant's mental state plays an "indispensable role" in determining arranger liability. *Burlington N.*, 556 U.S. at 611. In *Burlington Northern*, for example, the Supreme Court held that Shell was not an arranger even though it knowingly delivered its pesticides to the contaminated site and "was aware" that spills occurred during delivery, because there was no indication that Shell "*intended* such spills to occur." *Id.* at 612–13 (emphasis added).

3M cannot be an arranger here either. Although the City alleges that 3M operated a lab in Dalton and that, "[u]pon information and belief," wastewater containing PFAS was discharged from the lab to the POTW, the City does not allege *any facts* at all about 3M's "state of mind" with respect to the lab—much less that 3M *intended* to discharge PFAS into the POTW—even though a defendant's mental state is a critical requirement for arranger liability. *Burlington N.*, 556 U.S. at 611. In the absence of any allegations about 3M's state of mind, the City has not pled a basis for arranger liability. *E.g.*, *Wells Fargo Bank, N.A. v. Renz*, 2011 WL 97649, at \*4 (N.D. Cal. Jan. 12, 2011) (dismissing CERCLA claim where plaintiffs "fail[ed] to allege any facts that could establish that [defendant] intentionally planned for any disposal").

**B.     No Claim Under Section 107(a) Has Accrued.**

The City's CERCLA claims fail for the additional reason that no claim under section 107(a) has even accrued, since the City's action is a "remedial"—*not* a "removal"—action, and no physical on-site construction has commenced.

"A claim ordinarily accrues when a plaintiff has a complete and present cause of action," and "the limitations period generally begins to run at the point when the plaintiff can file suit and obtain relief." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014).  CERCLA divides cost recovery actions into two categories:  "removal" actions and "remedial" actions.  42 U.S.C. § 9613(g)(2).  A remedial action like this one must be brought "within 6 years after initiation of physical on-site construction of the remedial action."  *Id.*; *United States v. Middleton*, 276 F. Supp. 3d 1352, 1357 (M.D. Ga. 2017).

The City's suit is plainly a remedial action; such actions "are long-term, more thoroughly researched and planned permanent remedies to the release or threatened release of hazardous substances." *Middleton*, 276 F. Supp. 3d at 1357; *see also Santa Clarita Valley Water Agency v. Whittaker Corp.*, 99 F.4th 458, 478 (9th Cir. 2024); *Pub. Serv. Co. of Colo. v. Gates Rubber Co.*, 175 F.3d 1177, 1182 (10th Cir. 1999) ("remedial action seeks to effect a permanent remedy to the release of hazardous substances").  This is in contrast to removal actions, which "are short-term and meant to mitigate any immediate risk or harm caused by hazardous contamination."  *See Santa Clarita*, 99 F.4th at 478

("Removal actions are short-term and meant to mitigate any immediate risk or harm."). The City alleges here that it must address "long-running contamination," both to "remedy the existing PFAS contamination . . . and to prevent future PFAS contamination." Compl. ¶¶ 1, 13, 17, 134. It does not allege that it seeks to "quickly resolve," *Middleton*, 276 F. Supp. 3d at 1357–58, an "immediate release or threat of release," *Pub. Serv.*, 175 F.3d at 1182.

Because this is a remedial action, the City's claims are subject to the six-year statute of limitations that begins to run upon the "initiation of physical on-site construction of the remedial action." 42 U.S.C. § 9613(g)(2)(B). The Ninth Circuit has held that "'the initiation of physical on-site construction of the remedial action' can only occur after [a] final remedial action plan is adopted." *California ex rel. Cal. Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 666–67 (9th Cir. 2004).[2] A "remedial action" consists of "actions consistent with permanent remedy." 42 U.S.C. § 9601(24). And a court cannot know if an action is "'consistent with permanent remedy'" until the "permanent remedy is determined." *Neville*, 358 F.3d at 667 & n.3.

Here, the City does not allege that a final remediation plan has been adopted, even though the Land Application System Permit requires it to "develop a plan" to ensure maximum contaminant levels are not exceeded, and

---

[2] *But see Schaefer v. Town of Victor*, 457 F.3d 188, 209 (2d Cir. 2006); *United States v. Navistar Int'l Transp. Corp.*, 152 F.3d 702, 712 (7th Cir. 1998).

to submit that plan for "EPD approval." Compl. ¶ 120. Instead, it has only began evaluating "potential remedial options." *Id.* ¶¶ 132–33. Because the City has not broken ground pursuant to a remedial plan, the "initiation of physical on-site construction" has not yet occurred. 42 U.S.C. § 9613(g)(2)(B). And because the City's claim for remedial action costs has not yet accrued, it is "unable to maintain a remedial action under [section] 107(a)." *City of Rialto v. U.S. Dep't of Def.*, 2007 WL 9723250, at *8 (C.D. Cal. June 27, 2007).

### C. The City Fails to Allege That It Incurred Costs Consistent with the National Contingency Plan.

Finally, and for similar reasons, the City's CERCLA claims fail because the City has failed to plausibly allege it incurred response costs "consistent with the national contingency plan" ("NCP"), as necessary to "state a claim for response costs under section 107," *Miller v. D.C. Water & Sewer Auth.*, 790 F. App'x 218, 219 (D.C. Cir. 2019); *see, e.g.*, *Union Pac. R.R. Co. v. Reilly Indus., Inc.*, 215 F.3d 830, 835 (8th Cir. 2000) ("NCP compliance is a prerequisite for recovery of response costs."); *Carson Harbor Village v. County of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006) (similar); *Southfund Partners III v. Sears, Roebuck & Co.*, 57 F. Supp. 2d 1369, 1380 (N.D. Ga. 1999) (rejecting claim where plaintiff failed to show its "actions were consistent with the NCP").[3]

---

[3] The NCP is more fully known as the National Oil and Hazardous Substances Pollution Contingency Plan. 40 C.F.R., Part 300; *Union Pac.*, 215 F.3d at 835.

The NCP is "a series of regulations, promulgated by the EPA, that establish the procedures and standards for government and voluntary response actions to hazardous substances." *Blasland*, 283 F.3d at 1295. Response costs are "considered 'consistent with the NCP' if the action, when evaluated as a whole, is in substantial compliance with [40 C.F.R. § 300.700(c)(5)–(6)], and results in a CERCLA-quality cleanup." 40 C.F.R. § 300.700(c)(3)(i); *see also Bd. of Tr. of Leland Stanford Junior Univ. v. Agilent Techs., Inc.*, 573 F. Supp. 3d 1371, 1374–75 (N.D. Cal. 2021). While "immaterial or insubstantial deviations" from the NCP will not render a cleanup inconsistent with the NCP, 40 C.F.R. § 300.700(c)(4), "[t]he burden on a private party to show compliance with the NCP . . . is ordinarily not an easy one." *Morrison Enters. v. McShares, Inc.*, 302 F.3d 1127, 1136 (10th Cir. 2002).

Indeed, the NCP identifies nine "potentially applicable" provisions concerning issues like worker safety, documentation of expenditures, and remedial investigations and feasibility studies. 40 C.F.R. § 300.700(c)(5)(i)–(ix). The NCP further provides that parties "should provide an opportunity for public comment concerning the selection of the response action." *Id.* § 300.700(c)(6). And a response action must protect "human health and the environment" and be "cost-effective." *Southfund*, 57 F. Supp. 2d at 1381.

The City fails to allege any facts indicating it has incurred response costs consistent with the NCP or complied with any of the provisions of 40 C.F.R.

§ 300.700(c)(5)–(6). For example, the City does not allege that it has complied with the remedial investigation and feasibility study requirements in 40 C.F.R. § 300.430. *See* 40 C.F.R. § 300.700(c)(5)(viii); *see, e.g.*, *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 707–09 (6th Cir. 2006) (affirming summary judgment for defendant where plaintiff did not substantially comply with remedial investigation and feasibility study requirements); *Carson Harbor*, 433 F.3d at 1265–69 (same); *Southfund*, 57 F. Supp. 2d at 1383.

Nor does the City allege that it provided an opportunity for the public to comment on its planned response action. *See* 40 C.F.R. § 300.700(c)(6). Compliance with the public comment requirements is material and required "[t]o demonstrate substantial compliance with the NCP." *Southfund*, 57 F. Supp. 2d at 1380; *see Reg'l Airport*, 460 F.3d at 708 ("meaningful opportunity for public comment must occur before the final remedial action is chosen"). Thus, "[f]ailure to provide a meaningful opportunity for public participation and comment . . . is inconsistent with the NCP," and sufficient to defeat a claim under section 107(a). *E.g.*, *Union Pac.*, 215 F.3d at 835–39 (affirming summary judgment for defendant where plaintiff failed to substantially comply with public participation requirements); *Reg'l Airport*, 460 F.3d at 708–09 (same); *Miller*, 790 F. App'x at 219 (affirming dismissal where "the complaint allege[d] no facts that could support a plausible inference of compliance" with the NCP).

The City further fails to allege that its proposed response action would

be cost-effective.  To determine whether a response action is cost-effective, "one must first determine the response action's overall effectiveness by considering . . . three criteria," and then compare the overall effectiveness "to the costs." *Southfund*, 57 F. Supp. 2d at 1381.  The City alleges no facts concerning the overall effectiveness or costs of its response action—nor could it, given its apparent failure to develop or adopt a response plan before filing this lawsuit. Instead, the City alleges only that "Dalton Utilities' response costs are consistent with the" NCP.  Compl. ¶¶ 140, 147.  But that is exactly the type of "formulaic recitation of the elements of a cause of action [that] will not do." *Iqbal*, 556 U.S. at 678.  Accordingly, the CERCLA claims should be dismissed.

## II.     The City's Common Law and Strict Liability Claims Are Time Barred.

The City's common law and strict liability claims are all subject to—and barred by—a four-year statute of limitations applicable to claims for "trespass upon or damage to" real property.  O.C.G.A. § 9-3-30(a).  This requires dismissal of Counts III (negligence), IV (nuisance), V (trespass), IX (defective design), and X (failure to warn).

Because the alleged property damage at issue here involves environmental contamination, the limitations period is subject to the federal discovery rule in 42 U.S.C. § 9658(a)(1), under which the four-year period begins to run when "'the plaintiff knew (or reasonably should have known)

that the . . . property damages . . . were caused or contributed to by the hazardous substance.'" *Briggs & Stratton Corp. v. Concrete Sales & Servs., Inc.*, 990 F. Supp. 1473, 1483 (M.D. Ga. 1998) (quoting 42 U.S.C. § 9658(b)(4)(A)); *Tucker v. S. Wood Piedmont Co.*, 28 F.3d 1089, 1090–91 (11th Cir. 1994). It is apparent from the Complaint that the common law and strict liability claims accrued no later than 2009, rendering the claims time barred. *See AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982).

## A.    The City's Negligence and Strict Liability Claims Are Time Barred.

"[A] cause of action in negligence accrues and the statute of limitation begins to run when there is a negligent act coupled with a proximately resulting injury." *Wilks v. Overall Constr. Inc.*, 674 S.E.2d 320, 323 (Ga. Ct. App. 2009). Similarly, claims for strict liability begin to accrue when the property damage occurs. *See Colormatch Exteriors, Inc. v. Hickey*, 569 S.E.2d 495, 497 (Ga. 2002); *Ron D. Beal, P.A. v. Hartford Fire Ins. Co.*, 2020 WL 13587898, at *5 (N.D. Ga. Dec. 1, 2020).

The negligence and strict liability claims began to accrue no later than 2009, even under the federal discovery rule. These claims are premised on the assertion that 3M is liable for the discharge of wastewater containing PFAS to the POTW and its sale of PFAS products to the Carpet Manufacturers. Compl. ¶¶ 155–58. But according to the City, 3M's alleged conduct occurred decades

ago—it began selling to the Carpet Manufacturers in the 1970s and purportedly discharged PFAS from its lab "in at least 1989." *Id.* ¶¶ 36, 96. And the City alleges it discovered the alleged property damage by 2009, when it concluded the POTW contained "elevated levels of PFAS," *id.* ¶ 127.

Because the Complaint alleges the City was aware of the supposed injury by no later than 2009, the City's claim accrued, and the statute of limitations began to run, no later than 2009. The negligence and strict liability claims are thus barred. *E.g.*, *Murphy v. CitiMortgage, Inc.*, 2018 WL 10333829, at *6 (N.D. Ga. Jan. 31, 2018) (dismissing negligence claim under O.C.G.A. § 9-3-30 on pleadings); *Briggs & Stratton Corp. v. Concrete Sales & Servs.*, 29 F. Supp. 2d 1372, 1377 (M.D. Ga. 1998) (strict liability claim barred because plaintiff knew about alleged contamination more than four years before suit); *Davis Bros., Inc. v. Thornton Oil Co.*, 12 F. Supp. 2d 1333, 1338 (M.D. Ga. 1998).

**B.    The City's Nuisance and Trespass Claims Are Time Barred.**

The four-year limitations period applies to the City's nuisance and trespass claims, but their classification as either "permanent" or "continuing" controls how "the statute of limitations will be applied." *City of Atlanta v. Carlisle*, 858 S.E.2d 543, 545 (Ga. Ct. App. 2021).

A "permanent" nuisance or trespass is one where the alleged damage is "complete upon the completion of the act by which the nuisance [or trespass] is created," and "accrues immediately upon the creation of the nuisance" or

trespass. *Liberty County v. Eller*, 761 S.E.2d 164, 168 (Ga. Ct. App. 2014). A "continuing" nuisance or trespass "is one which can and should be abated by the person erecting or maintaining it," and "every continuance" of the trespass or nuisance gives rise to a "fresh action." *Id.* In the contamination context, a claim for a "continuing" nuisance or trespass "is limited to situations where contamination continues to spread." *Davis Bros.*, 12 F. Supp. 2d at 1338 (quoting *Smith v. Branch*, 487 S.E.2d 35, 37–38 (Ga. Ct. App. 1997)). The "mere continuing 'existence' of old, completed contamination" does not "constitute[] a continuing nuisance or . . . trespass." *Smith*, 487 S.E.2d at 38.

Here, the City asserts that 3M created a "continuous" nuisance and trespass, Compl. ¶¶ 162, 172, but those conclusory allegations are not supported by any facts or entitled to any weight, *see Iqbal*, 556 U.S. at 678. Indeed, the City does not allege the purported PFAS contamination in the POTW has "spread" or "migrate[d]" from some other location. *Cf. Smith*, 487 S.E.2d at 37. Rather, it alleges the asserted contamination occurred in the very spot it alleges must be remediated and has existed there since at least 2009. Compl. ¶¶ 86, 90–91, 124–31; *see Davis Bros.*, 12 F. Supp. 2d at 1338 ("argument[] that the continued existence of contamination constitutes a continuing trespass or nuisance . . . ha[s] . . . been flatly rejected").

Even if the alleged PFAS contamination had spread or migrated, the purported nuisance and trespass is not continuous because 3M could not abate

it. The Carpet Manufacturers—not 3M—discharged wastewater to the POTW, and the City—not 3M—exercises control over the POTW and land-applied the biosolids to the Land Application System. Compl. ¶¶ 2, 6, 82–91, 110. The City's claims for nuisance and trespass are time barred.

## III. The City's Common Law and Strict Liability Claims Fail for Lack of Proximate Cause.

Proximate cause is an element of the City's negligence (Count III), nuisance (Count IV), trespass (Count V), and strict liability claims (Counts IX–X).[4] To plead proximate cause, the City must allege that 3M's alleged conduct was the "*legal* cause of [its] injuries." *Bonard v. Lowe's Home Ctrs., Inc.*, 479 S.E.2d 784, 787 (Ga. Ct. App. 1996). "A determination that a defendant's conduct was not the proximate cause of the injury is not a determination that no causal connection existed." *Blondell v. Courtney Station 300 LLC*, 865 S.E.2d 589, 595 (Ga. Ct. App. 2021). Rather, the proximate cause inquiry asks whether the causal connection between that conduct and the injury is "*too remote* for the law to countenance a recovery." *Id.* (emphasis added).[5]

---

[4] *See Lore v. Suwanee Creek Homeowners Ass'n, Inc.*, 699 S.E.2d 332, 338 (Ga. Ct. App. 2010) (proximate cause required for trespass, negligence, and nuisance); *Chi. Hardware & Fixture Co. v. Letterman*, 510 S.E.2d 875, 877–78 (Ga. Ct. App. 1999) (proximate cause required for strict products liability).

[5] In the context of nuisance claims, the "control" element also requires that the alleged tortfeasor have controlled the cause of the harm, which in turn requires a showing of proximate cause. *Green Meadows Hous. Partners, LP v. Macon-Bibb County*, 906 S.E.2d 430, 439–40 (Ga. Ct. App. 2024). Thus, a

Where, as here, someone other than the defendant "intervened and w[as] the cause of [the] injuries," a causal connection is too remote. *Bonard*, 479 S.E.2d at 787; *see also Edwards v. Campbell*, 792 S.E.2d 142, 147 (Ga. Ct. App. 2016). Under this "doctrine of intervening causes, a defendant's breach of a duty does not constitute a 'proximate cause' of a plaintiff's injury when there has intervened between the act of the defendant and the injury to the plaintiff, an independent act or omission of someone other than the defendant." *Maynard v. Snapchat, Inc.*, 870 S.E.2d 739, 747 (Ga. 2022); *see also Yearty v. Scott Holder Enters., Inc.*, 824 S.E.2d 817, 821 (Ga. Ct. App. 2019).

Although proximate cause is often a jury question, "the court may make a determination as a matter of law" in "plain and undisputed cases," *Bonard*, 479 S.E.2d at 787, even at the motion to dismiss stage. *Karekezi v. Pinnacle Sys., Inc.*, 885 S.E.2d 235, 240–41 (Ga. Ct. App. 2023). Georgia courts have thus found proximate cause lacking as a matter of law where, as here, the defendant's purported conduct—while a necessary step in the causal chain— was too remote to constitute the legal cause of the plaintiff's alleged injuries.

In *Alexander v. Hulsey Environmental Services, Inc.*, 702 S.E.2d 435, 438 (Ga. Ct. App. 2010), for example, an environmental services company brought waste to a disposal facility that plaintiffs alleged was a nuisance. The plaintiffs

---

defendant proximately causes a nuisance only when he controls it. *See Terry v. Catherall*, 789 S.E.2d 218, 221 (Ga. Ct. App. 2016).

asserted that the environmental services company sent its waste to the disposal facility, that the facility "processe[d] the waste . . . , and that the waste disposal operation generate[d] offensive odors and attract[ed] pests, which damage[d] the [plaintiffs'] ability to use and enjoy their nearby properties." *Id.* The court held the disposal facility proximately caused the alleged nuisance— but the company that merely brought waste to the facility did not. *Id.* at 438– 39. Even though the wastewater necessarily contained the company's waste, the company did "not direct or control any conduct of the waste disposal operation," and thus did not proximately cause the alleged harms. *Id.*

Here, 3M's alleged conduct is even more remote than the environmental services company's conduct in *Alexander*, and thus cannot be the proximate cause of the alleged contamination of the POTW as a matter of law. The City alleges that (1) the Carpet Manufacturers purchased 3M's PFAS products, (2) the Carpet Manufacturers applied those products to its carpets, (3) the Carpet Manufacturers generated wastewater containing PFAS that was discharged to the POTW, (4) the City used wastewater treatment methods that could not treat industrial water containing PFAS, and (5) the City land-applied the PFAS-laden wastewater onto the Land Application System. Compl. ¶¶ 2, 4, 6, 80–91, 110, 178. This multi-step chain of causation fails to connect 3M's

alleged conduct to the harms asserted.[6]  After all, the City does not allege that 3M could "direct or control any conduct" of the Carpet Manufacturers, much less the POTW.  *Alexander*, 702 S.E.2d at 438.  For instance, 3M had no "legal right" to dictate how the Carpet Manufacturers applied PFAS or disposed of their wastewater, nor could 3M control how the City treated or land-applied wastewater arriving at the POTW.  *Keener v. Addis*, 5 S.E.2d 695, 698 (Ga. Ct. App. 1939).  The intervening acts of the Carpet Manufacturers and the City break the causal chain between 3M and the alleged contamination.

## IV.    The City Fails to Plausibly Allege Trespass (Count V).

The City fails to allege a trespass claim because it does not allege any intentional acts 3M directed at the City's property.  In Georgia, trespass is a "voluntary, intentional" "invasion" of another's property.  *Rouse v. City of Atlanta*, 839 S.E.2d 8, 13 (Ga. Ct. App. 2020), *disapproved of in part on other grounds*, 896 S.E.2d 571 (Ga. 2023).  "Trespass is a direct tort," *Francis v. Teague*, 2009 WL 10665635, at *6 (N.D. Ga. Feb. 13, 2009), which "involves a *wrongful act* that interferes with an owner's right to the exclusive use and enjoyment of his property," *Ga.-Pac. Consumer Prods., LP v. Ratner*, 812 S.E.2d 120, 128 (Ga. Ct. App. 2018).

---

[6] To the extent the City relies on 3M's lab (*but see infra* Section VIII), a multi-step chain still exists, albeit a shorter one, as the City's independent intervening conduct was still necessary to cause the claimed harm.

The only intentional actions 3M allegedly took are "selling and supplying PFAS to the Carpet Manufacturing Defendants." Compl. ¶ 169. These allegations do not assert an "invasion" on the *City's* property. *See Rouse*, 839 S.E.2d at 13. In fact, the Complaint does not identify *any* intentional act taken by *3M* directed at the City's property at all. *See Page v. Braddy*, 564 S.E.2d 538, 541–42 (Ga. Ct. App. 2002) (no liability where defendant did not trespass on plaintiff's land or direct actions of trespasser); *Briggs & Stratton Corp. v. Concrete Sales & Servs.*, 971 F. Supp. 566, 573 (M.D. Ga. 1997) (no trespass where defendant had no right to enter site where waste disposal occurred).

In *Georgia-Pacific Consumer Products, LP v. Ratner*, for example, property owners alleged that Georgia Pacific's release of hydrogen sulfide, which was part of its manufacturing process, damaged the owners' property. 812 S.E.2d at 123. The court held that the emissions during Georgia Pacific's lawful operation did not constitute trespass, as the mill was not taking "direct action to send hydrogen sulfide onto the Plaintiffs' property." *Id.* at 129.

Here, too, the City does not allege in support of its trespass claim that 3M directed any PFAS to the POTW or controlled the Carpet Manufacturers' discharge of PFAS to the POTW. The trespass claim should thus be dismissed.

## V. The GWQCA Claim Should Be Dismissed for Impermissible Shotgun Pleading (Count VII).

The City's claim under the Georgia Water Quality Control Act

("GWQCA") should be dismissed because it is classic shotgun pleading. Shotgun pleadings include "those in which each count adopts the allegations of all preceding counts;" or "are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Yeyille v. Miami Dade Cnty. Pub. Schs.*, 643 F. App'x 882, 884 (11th Cir. 2016).

After adopting the prior 181 paragraphs of the Complaint and reciting the GWQCA statutory provisions, the City alleges that "Defendants intentionally or negligently caused or permitted PFAS to be discharged or deposited into waters of the state by discharging PFAS to the Dalton Utilities POTW." Compl. ¶ 187. The City fails to allege "the specific circumstances under which each defendant allegedly violated" the GWQCA. *Jenkins v. Meta Platforms, Inc.*, 2023 WL 4306908, *6 (M.D. Ga. June 30, 2023). At most, the City provides a formulaic recitation of the elements of a GWQCA claim that fails under *Iqbal*. This "shotgun pleading" "fail[s] to satisfy the pleading standards of [Rule] 8," *id.*, so the City's GWQCA claim should be dismissed.

## VI.    The Complaint Fails to Allege a Violation of the Sewer Use Rules and Regulations (Count VIII).

The City challenges 3M's conduct under its Sewer Use Rules and Regulations, a document enacted by the Water, Light, & Sinking Fund Commission of Dalton, Georgia. As an initial matter, the City does not demonstrate that these regulations are enforceable in a civil suit. *See Best*

*Jewelry Mfg. Co. v. Reed Elsevier Inc.*, 780 S.E.2d 689, 695–96 (Ga. Ct. App. 2015) (no private right of action where not clearly provided in rules).

The City's SURR claim also fails because it does not allege facts showing that 3M discharged PFAS in violation of the SURR. The SURR bars "[u]ser[s]" from "contribut[ing] or caus[ing] to be contributed directly or indirectly into the POTW any Pollutant or Wastewater that causes Pass Through or Interference." SURR § 2.4.1. The regulations define "Pass Through" as "a discharge that exits . . . into waters of the State of Georgia containing quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, are a cause of a violation of any requirement of Dalton Utilities' LAS permit . . ." *Id.* § 1.4. And they define "Interference" as "a discharge, which alone or in conjunction with a discharge or discharges from other sources, inhibits or disrupts the POTW, its treatment processes or operations, or its sludge process, or which causes, in whole or in part, a violation of any requirements of Dalton Utilities' LAS permit[.]" *Id.*

The City alleges that "Shaw, Aladdin, 3M, DuPont, and Invista violated the SURR by discharging Pollutants that were likely to and did cause Interference with and Pass Through of the POTW." Compl. ¶ 201. But it does not allege how 3M's purported discharge of wastewater containing PFAS "inhibit[ed]" or "disrupt[ed]" the POTW's operations. All the actions the City has taken in response to the alleged presence of PFAS at the POTW have been

voluntary and in "anticipation of the federal regulations." *Id.* ¶ 132.

Nor does the City allege how this purported discharge caused the POTW to violate its LAS permit. It alleges the opposite: (1) "[t]he LAS Permit does not reference or impose any requirements relating to PFAS"; (2) "[a]lthough elevated, the presence of PFAS at the POTW did not violate any of Dalton Utilities' permit conditions or other regulatory requirements at the time"; and (3) "[n]either EPA nor EPD took any action with respect to PFAS at the LAS." *Id.* ¶¶ 117, 128–29, 131. The City's claim under SURR should be dismissed.

## VII. The City Fails to Plausibly Allege Its Strict Liability Claims (Counts IX and X).

In addition to failing for lack of proximate cause, the City's claims for design defect (Count IX) and failure to warn (Count X) fail because both claims are barred by the statute of repose, the City has failed to allege a specific defect in any of 3M's products, and 3M owed no duty to warn the City.

### A. The City's Strict Liability Claims Are Barred by the Statute of Repose.

Under Georgia's statute of repose, "strict liability actions filed more than ten years after the 'date of the first sale for use or consumption of' the product are completely barred." *Chrysler Corp. v. Batten*, 450 S.E.2d 208, 212 (Ga. 1994) (quoting O.C.G.A. § 51-1-11(b)(2)); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1307 (11th Cir. 1999). The "statute of repose . . . limits the time within which an action may be brought and is not related to the accrual of any

cause of action.  The injury need not have occurred, much less have been discovered." *Wright v. Robinson*, 426 S.E.2d 870, 871 (Ga. 1993).  In this way, the statute "stands as an unyielding barrier to a plaintiff's right of action," and "destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists." *Id.* at 871–72.

The statute of repose "begins to run when a finished product is sold as new to the intended consumer who is to receive the product." *Thomas v. Trinity Indus., Inc.*, 2020 WL 13544344, at *6 (N.D. Ga. Aug. 19, 2020) (quoting *Campbell v. Altec Indus., Inc.*, 707 S.E.2d 48, 48–9 (Ga. 2011)).  Here, 3M's "first sale for use or consumption" of its PFAS-products to the Carpet Manufacturers occurred far more than 10 years ago.  The City alleges that 3M began selling its PFAS products to the Carpet Manufacturers in or around the 1970s, and that the Carpet Manufacturers have been discharging PFAS-laden wastewater since *at least* the 1980s.  *See* Compl. ¶¶ 36–37, 42, 81–83, 87–91. The City's strict liability claims are thus barred by the statute of repose.

## B.     The City Fails to State a Claim for Design Defect.

The City's defective-design claim independently fails.  To state a claim, "[t]he existence of a defect is crucial, because a manufacturer is not an insurer against all risks of injury associated with its product." *Goodson v. Bos. Sci. Corp.*, 2011 WL 6840593, at *4 (N.D. Ga. Dec. 29, 2011).  "[T]here is no liability for an 'unreasonably dangerous' product absent some defect." *Wheat v.*

*Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1360 (N.D. Ga. 1999).

The Complaint fails to allege a specific design defect. Although the Complaint "track[s] the requirements of O.C.G.A. § 51-1-11(b)," it fails to "describe *how* the [products] were defective." *Goodson*, 2011 WL 6840593, at 4. Instead, it generically describes Defendants' products collectively as "not merchantable and reasonably suited for their intended use." Compl. ¶ 206. That is insufficient. *See Brazil v. Janssen Res. & Dev. LLC*, 249 F. Supp. 3d 1321, 1338 (N.D. Ga. 2016) (dismissing for failure to allege a specific defect); *Moore v. Mylan Inc.*, 840 F. Supp. 2d 1337, 1344–45 (N.D. Ga. 2012) (similar); *Schmidt v. C.R. Bard, Inc.*, 2014 WL 5149175, at *3 (S.D. Ga. Oct. 14, 2014).

The Complaint also fails to allege that a safer alternative design existed at the time 3M manufactured the PFAS products, which is at the "heart" of design defect cases in Georgia. *Banks v. ICI Ams., Inc.*, 450 S.E.2d 671, 674 (Ga. 1994); *see Jones v. NordicTrack, Inc.*, 550 S.E.2d 101, 103 (Ga. 2001). "Liability for defective design attaches *only* when the plaintiff proves that the seller failed to adopt a reasonable, safer design that would have reduced the foreseeable risks of harm presented by the product." *Woods v. A.R.E. Accessories, LLC*, 815 S.E.2d 205, 210 (Ga. Ct. App. 2018). The City does not allege any safer alternative design existed at the time of manufacture. *See Fincher v. Monroe Cnty. Bd. of Comm'rs*, 2019 WL 510448, at *5 (M.D. Ga. Feb. 8, 2019) (dismissing claim for failure to allege alternative design).

**C.      The City Fails to Plausibly Allege a Failure to Warn Claim.**

To plead a claim for failure to warn, the City must plausibly allege that (1) 3M had a duty to warn, (2) 3M breached that duty, and (3) the breach was the proximate cause of the City's injury. *Travelers Home & Marine Ins. Co. v. Clawfoot Supply, LLC*, 2016 WL 9450453, at *3 (N.D. Ga. May 11, 2016). In addition to the absence of proximate cause, the City's failure to warn claim fails because 3M had no duty to warn and did not breach any purported duty.

*First*, the City cannot allege that a duty to warn exists. A manufacturer may owe a duty to warn consumers, purchasers, and reasonably foreseeable users of its products, and in certain cases, reasonably foreseeable third parties. *Certainteed Corp. v. Fletcher*, 794 S.E.2d 641, 645 (Ga. 2016). "The existence of a duty to warn . . . is a legal question," and "is not resolved exclusively on the basis of foreseeability." *Id.* Rather, "public policy play[s] an important role," since "impos[ing] a duty that either cannot feasibly be implemented or . . . would have no practical effect would be poor public policy." *Id.*

The City does not allege that 3M owed it a duty to warn. Rather, the City contends that 3M had a duty to warn the *Carpet Manufacturers*, so that they could alter how they disposed of wastewater containing PFAS before sending it to the POTW. Compl. ¶¶ 213–21. But the City does not allege that a warning would have had any "practical effect" on the Carpet Manufacturers' discharge practices, or that it would have been "distributed" to the City so it

could alter its own practices. *Certainteed*, 794 S.E.2d at 645. And recognizing a duty here would "create an almost infinite universe of potential plaintiffs" who have at some point encountered a product treated with PFAS. *Id.*; *see In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 87 F.4th 315, 318 (6th Cir. 2023) ("interaction with materials containing PFAS is a fact of daily life").

The Georgia Supreme Court has declined to impose this duty in analogous circumstances. In *Certainteed*, the plaintiff sued an asbestos manufacturer after being diagnosed with mesothelioma. 794 S.E.2d at 643. The defendant had exposed plaintiff's father to asbestos, and the plaintiff claimed she developed mesothelioma from exposure to her father's asbestos-covered clothing. *Id.* The plaintiff claimed that the manufacturer had a duty to warn her father about the dangers of asbestos dust, who could have taken steps to mitigate the risk to plaintiff. *Id.* at 645. The Georgia Supreme Court rejected that argument, since "the warning aimed at protecting third parties would not have been systematically distributed or available to the individuals to which it was targeted" and instead "the onus would have been on the *worker* to keep those third parties safe." *Id.* "[W]hile some workers might have taken steps to protect or warn family members or other individuals with whom they came in contact," the court declined to recognize a duty to warn and create potential liability when "other workers might not have taken such steps." *Id.*; *see Reichwaldt v. Gen. Motors LLC*, 304 F. Supp. 3d 1312, 1318 (N.D. Ga. 2018).

As in *Certainteed*, the City says that warning the Carpet Manufacturers would have allowed them to mitigate the alleged danger that 3M's PFAS products posed to the POTW.  That is "the same logical chain" that the Georgia Supreme Court rejected, and thus "the Court [should] find[] that [the City's] argument also fails under Georgia law."  *Reichwaldt*, 304 F. Supp. 3d at 1318.

*Second*, the City's failure to warn claim also fails because the Complaint alleges that 3M *did warn*, and thus there is no breach.  *See Travelers*, 2016 WL 9450453, at *3.  As stated, the City contends that 3M should have warned the Carpet Manufacturers about the alleged "environmental hazards" of PFAS and how to dispose of PFAS-laden wastewater before sending it to the POTW. Compl. ¶ 218.  But the Complaint indicates that 3M did just that.  The City alleges that 3M "advised [its] customers, including Shaw and Aladdin, regarding disposal of PFAS," including through a Materials Safety Data Sheet in 1986 that "*warned* that PFOA should be disposed of through incineration or at landfills capable of handling hazardous chemicals, not discharged into water bodies."  *Id.* ¶¶ 100–01 (emphasis added).  The City also alleges that 3M "publicly announced" in May 2000, that it was phasing out PFOS because the chemicals "persist[] in the environment" and "could potentially pose a risk to human health and the environment."  *Id.* ¶¶ 68–69.  These allegations show that 3M *did* provide the allegedly required warning and fatally undermine the City's failure to warn claim.  *See Travelers*, 2016 WL 9450453, at *2–3.

## VIII. Any Claim Predicated on 3M's Lab Should be Dismissed.

The Complaint contains two perfunctory paragraphs alleging that 3M operated a lab in Dalton and that wastewater discharged from the lab to the POTW contained PFAS. Compl. ¶¶ 95–96. These cursory allegations do not appear to be a basis for any of the City's non-CERCLA claims (except perhaps the City's negligence claim, *see id.* ¶¶ 152, 155). But any claim based on 3M's lab should be dismissed under *Twombly* because the City fails to allege any facts concerning the lab or how those facts would constitute a viable claim. For example, the City does not allege any facts about what, if anything, 3M knew or intended about the purported PFAS in its wastewater, or suggesting that the purported discharge of PFAS-laden wastewater from the lab caused the alleged elevated levels of PFAS at the POTW. *E.g.*, *Lore*, 699 S.E.2d at 338.

## IX. The City Fails to Allege Claims for Punitive Damages and Litigation Expenses (Counts VI and XI).

The City's claims for punitive damages and litigation expenses similarly fail because they are derivative of the City's underlying tort claims, all of which should be dismissed. *See* Compl. ¶¶ 174–81, 223–26; *Carter v. Progressive Mountain Ins.*, 761 S.E.2d 261, 264 (Ga. 2014); *Popham v. Landmark Am. Ins. Co.*, 798 S.E.2d 257, 264 (Ga. Ct. App. 2017).

## CONCLUSION

The City's Complaint should be dismissed.

February 7, 2025

Respectfully submitted,

*/s/ Benjamin P. Harmon*

Benjamin P. Harmon, GA Bar No. 979043
M. Christian King, Pro Hac Vice
Harlan I. Prater, IV, Pro Hac Vice
W. Larkin Radney, IV, Pro Hac Vice
LIGHTFOOT, FRANKLIN & WHITE LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
Telephone: (205) 581-0700
bharmon@lightfootlaw.com
cking@lightfootlaw.com
hprater@lightfootlaw.com
lradney@lightfootlaw.com

Lauren Goldman (pro hac vice forthcoming)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
lgoldman@gibsondunn.com

Ashley Johnson (pro hac vice forthcoming)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
Telephone: (214) 698-3111
ajohnson@gibsondunn.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

The City of Dalton, Georgia, acting
through its Board of Water, Light
and Sinking Fund Commissioners,
d/b/a Dalton Utilities,

        Plaintiff,

    v.

3M Company; Daikin America, Inc.;
EIDP, Inc. f/k/a E.I. DuPont de
Nemours and Company; The
Chemours Company; INV
Performance Surfaces, LLC;
Aladdin Manufacturing
Corporation; Shaw Industries
Group, Inc.; Shaw Industries, Inc.;
and DOES 1-10,

        Defendants.

Civil No. 4:24-cv-00293-WMR

## CERTIFICATE OF SERVICE
## AND COMPLIANCE WITH LOCAL RULE 5.1

I hereby certify that I have this date electronically filed the within and foregoing, which has been prepared using 13-point Century Schoolbook font, with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of records.

Dated: February 7, 2025       */s/ Benjamin P. Harmon*
                                  Of Counsel