IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| The City of Dalton, Georgia, acting through its Board of Water, Light and Sinking Fund Commissioners, d/b/a Dalton Utilities,<br><br>Plaintiff,<br><br>v.<br><br>3M Company; Daikin America, Inc.; EIDP, Inc. f/k/a E.I. DuPont de Nemours and Company; The Chemours Company; INV Performance Surfaces, LLC; Aladdin Manufacturing Corporation; Shaw Industries Group, Inc.; Shaw Industries, Inc.; and DOES 1-10,<br><br>Defendants. | Civil No. 4:24-cv-00293-WMR |

**MEMORANDUM OF LAW IN SUPPORT OF SHAW INDUSTRIES
GROUP, INC. AND SHAW INDUSTRIES, INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND .................................................................................................3

LEGAL STANDARD.............................................................................................8

ARGUMENT ........................................................................................................9

I.     Plaintiff Fails to State a Claim Under CERCLA ............................................9

II.    Plaintiff Fails to State a Claim Under State Law. .........................................14

    A.     Plaintiff's Tort Claims (Counts III, IV and V) Are Barred Because It Consented to Shaw's Discharges. ....................................................14

    B.     Plaintiff's Tort Claims Are Also Inadequately Pled. ..........................18

        1.     Plaintiff Does Not Plausibly Allege that Shaw Owed a Duty, and Thus Plaintiff's Negligence Claim Must be Dismissed.....18

        2.     Shaw Did Not Control the Alleged Nuisance, and Thus Plaintiff's Nuisance Claim Must Be Dismissed. ......................21

        3.     Plaintiff's Trespass Claim Should be Dismissed Because Plaintiff Fails to Allege Unlawful Conduct on the Part of Shaw. ......................................................................................22

    C.     Plaintiff Fails to State a Claim Under the GWQCA (Count VII). ......23

    D.     Plaintiff's Claims For Punitive Damages (Count VI) And Attorneys' Fees (Count X) Should Be Dismissed As Well. .................................24

CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Hulsey Env. Svcs., Inc.*,
    306 Ga. App. 459 (2010) ............................................................................21, 22

*Altamaha Riverkeeper, Inc. v. Rayonier, Inc.*,
    2015 WL 1505971 (S.D. Ga. Mar. 31, 2015) ..................................................15

*Anderson v. Atlanta Comm. For Olympic Games, Inc.*,
    261 Ga. App. 895 (2003) ................................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................8, 12

*Briggs & Stratton Corp. v. Concrete Sales & Svcs., Inc.*,
    971 F. Supp. 566 (M.D. Ga. 1997) ...............................................................23

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997)...........................................................................4

*Bryant v. Avado Brands, Inc.*,
    187 F.3d 1271 (11th Cir. 1999) .........................................................................3

*Burlington N. & Santa Fe Ry. Co. v. United States*,
    556 U.S. 599 (2009)............................................................................................9

*Carson Harbor Village, Ltd. v. Unocal Corp.*,
    287 F. Supp. 2d 1118 (2003) ...................................................................13, 14

*Chronister v. City of Atlanta*,
    99 Ga. App. 447 (1959) ................................................................................23

*City of Douglasville v. Queen*,
    270 Ga. 770 (1999) ...................................................................................15, 20

*Concrete Sales & Servs., Inc. v. Blue Bird Body Co.*,
    211 F.3d 1333 (11th Cir. 2000) .....................................................................10

*Corp. of Mercer Univ. v. Nat'l Gypsum Co.*,
  1986 WL 12447 (M.D. Ga. Mar. 9, 1986) .......................................................... 22

*Crutchfield Properties, LLLP v. Ashgan Prods., LLC*,
  No. 4:17-CV-00076-WMR, 2019 WL 12762944 (N.D. Ga. May
  16, 2019) ................................................................................................ 10, 12

*Delancy v. St. Paul Fire & Marine Ins. Co.*,
  947 F.2d 1536 (11th Cir. 1991) ........................................................................ 19

*Department of Labor v. McConnell*,
  305 Ga. 812 (2019) ........................................................................................... 20

*DeSarno v. Jam Golf Mgmt., LLC*,
  295 Ga. App. 70 (2008) .................................................................................... 23

*Diamond v. Dep't of Trans.*,
  326 Ga. App. 189 (2014) ................................................................................... 18

*Effingham Cty. Bd. Of Comm'rs v. Shuler Bros., Inc.*,
  265 Ga. App. 754 (2004) .................................................................................. 15

*Franklin Cty. v. Fieldale Farms Corp.*,
  270 Ga. 272 (1998) ........................................................................................... 17

*Gatto v. City of Statesboro*,
  312 Ga. 164 (2021) ........................................................................................... 21

*Georgia-Pacific Consumer Prods., LP v. Ratner*,
  345 Ga. App. 434 (2018) .................................................................................. 22

*Grinold v. Farist*,
  284 Ga. App. 120 (2007) .................................................................................. 21

*Hull v. Merck & Co., Inc.*,
  758 F.2d 1474 (11th Cir.1985) ......................................................................... 17

*Hymowitz v. Supreme Lending*,
  No. 1:20-CV-3763-WMR, 2020 WL 10180768 (N.D. Ga. Dec. 7,
  2020) ..................................................................................................................... 3

*Irving v. Dish Network LLC*,
  2012 WL 12875684 (N.D. Ga. Oct. 23, 2012) ................................................ 15

*In re James P. Campbell, III and Sydney Station Farms, Inc.*,
  1996 WL 226069 (Office of State Admin. Hearings, April 30,
  1996) ...................................................................................................23

*Jefferson v. Houston Hosps., Inc.*,
  336 Ga. App. 478 (2016) .................................................................25

*Jones Creek Inv., LLC v. Columbia Cty.*,
  2013 WL 12141348 (S.D. Ga. Dec. 23, 2013) ...........................23, 24

*Jones Creek Investors, LLC v. Columbia Cty.*,
  98 F.Supp.3d 1279 (S.D. Ga. 2015) .................................................15

*Lubin v. Cincinnati Ins. Co.*,
  No. 1:09-cv-2985, 2010 WL 5313754 (N.D. Ga. Dec. 17, 2010) ........8

*Minaird v. Citimortgage, Inc.*,
  No. 113CV00152JECWEJ, 2013 WL 12109495 (N.D. Ga. July 26,
  2013) ...................................................................................................19

*Monumedia II, LLC v. Dep't of Trans.*,
  343 Ga. App. 49 (2017) ....................................................................16

*Morrison v. Exxonmobil Corp.*,
  1:03-CV-140, 2005 WL 2406057 (M.D. Ga. Sept. 28, 2005) ...........19

*Newman Mfg. Co. v. Young*,
  109 Ga. App. 763 (1964) ..................................................................15

*Pan E. Expl. Co. v. Hufo Oils*,
  855 F.2d 1106 (5th Cir. 1988) ..........................................................17

*Penick v. Foster*,
  129 Ga. 217 (1907) ...........................................................................17

*Porch v. Wright*,
  116 Ga. App. 138 (1967) ..................................................................20

*Robinson v. Bird Rides Inc.*,
  2020 WL 2129241 (N.D. Ga. May 5, 2020).....................................18

*Save America's Vital Environment, Inc. v. Butz*,
  347 F. Supp. 521 (N.D. Ga. 1972).....................................................23

*Servicemaster Co., L.P. v. Martin*,
  252 Ga.App. 751, 556 S.E.2d 517 (2001) ........................................................19

*Sheaffer v. Marriott Int'l, Inc.*,
  349 Ga. App. 338 (2019) ....................................................................18, 20

*Sheppard v. Yara Engineering Corp.*,
  248 Ga. 147, 281 S.E.2d 586 (1981) ............................................................19

*South Florida Water Mgmt. Dist. v. Montalvo*,
  84 F.3d 402 (11th Cir. 1996) ........................................................9, 10, 11, 12

*Sparra v. Deutsche Bank Nat. Tr. Co.*,
  336 Ga. App. 418 (2016) ...........................................................................24

*Stallings v. Cuttino*,
  285 Ga. App. 581 (1992) ...........................................................................17

*State of Idaho v. Hanna Mining Co.*,
  699 F.Supp. 827 (D. Idaho 1987) ...........................................................13, 14

*Stone Man, Inc. v. Green*,
  263 Ga. 470 (1993) ..................................................................................25

*Terry v. Catherall*,
  337 Ga. App. 902 (2016) ...........................................................................21

**Statutes**

33 U.S.C. § 1342 .........................................................................13, 14

42 U.S.C.
  § 6903(3).............................................................................................10, 11
  § 9601(10).................................................................................................13
  § 9601(10)(A) ...........................................................................................14
  § 9607(a) ...................................................................................................9
  § 9607(a)(3) ...............................................................................................9
  § 9607(j)...................................................................................................13

O.C.G.A.

§ 12-5-21(a) ....................................................................24

§ 12-5-22(13) ..................................................................24

§ 12-5-30(f) ....................................................................14

§ 12-5-51 ........................................................................20

§ 13-6-11 ..................................................................24, 25

§ 51-1-1 ..........................................................................19

§ 51-11-2 ........................................................................15

§ 51-12-5.1 ...............................................................24, 25

**Other Authorities**

40 C.F.R. part 123 ..........................................................14

GA DNR Rule 391-3-6-.09(8)(b) .......................................4

https://www.daltonga.gov/finance/page/annual-comprehensive-
financial-report-acfr (last visited May 15, 2025)....................3

https://www.EPA.gov/newsreleases/EPA Announces It Will Keep
Maximum Contaminant Levels for PFOA, PFOS | US EPA (last
visited May 15, 2025) ...........................................................8

**INTRODUCTION**

The City of Dalton ("Plaintiff") owns and operates one of the largest wastewater treatment facilities in the United States (the "POTW"), a "complicated operation that is subject to extensive regulating, permitting, and oversight by the Environmental Protection Division ("EPD") of the Georgia Department of Natural Resources." *See* First Amended Complaint [Doc. 85] ("FAC") at ¶ 3. Over the course of decades, Plaintiff alleges that the POTW became contaminated with synthetic chemicals known as PFAS that its existing systems cannot treat or remove. Now, many years after regulators and the public first became aware of PFAS' persistence in the environment and the alleged contamination at the POTW, Plaintiff is planning to upgrade its systems, and it wants to shift the costs of those upgrades—potentially hundreds of millions of dollars—to its longtime customer Shaw[1] and the other Defendants.

Plaintiff does not have a valid claim against Shaw, and instead, Plaintiff has lumped Shaw into its legitimate claims against the Chemical Manufacturers. Though Plaintiff acknowledges the POTW's extensive permitting scheme, it fails to mention that under that scheme, it has the power to issue permits to industrial users, and in the exercise of that power, has issued and renewed permits to Shaw ***five times***

---

[1]  Shaw Industries, Inc. does not own or operate manufacturing facilities. Shaw Industries, Inc. is wholly owned by Shaw Industries Group, Inc. f/k/a "Shaw Industries, Inc." Herein, both of these companies are referred to as "Shaw."

between 2004 and 2024, even as it admittedly became aware of the facts alleged in the FAC. Plaintiff and its regulators have had the power throughout this time to require Shaw to monitor, pretreat or otherwise limit the PFAS in its wastewater, but it has never done so. Even now, Plaintiff does not allege that Shaw has ever violated any of its permits, or that the permits even regulated or addressed PFAS. For that matter, Plaintiff also does not allege that it has violated its own permits to operate the POTW, effectively conceding that the presence of PFAS at the POTW has violated no state law or regulation. The various permits doom Plaintiff's state law claims, for they show that Plaintiff consented to Shaw's delivery of wastewater containing PFAS. The permits also leave Plaintiff without a remedy under the Georgia Water Quality Control Act ("GWQCA"), which does not impose civil liability on permit holders like Shaw.

Plaintiff also does not allege facts necessary to state a claim under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") against Shaw. For instance, it does not allege facts showing that Shaw arranged for the disposal of hazardous substances. And Plaintiff's alleged response costs relate to federally permitted releases subject to a valid federal groundwater discharge permit, and are therefore exempt from recourse under CERCLA.

Finally, since the FAC fails to plead any viable statutory or tort claim, its

derivative requests for punitive damages and attorneys' fees fail as well.[2]

## BACKGROUND

Plaintiff, through Dalton Utilities, owns and operates the POTW, one of the largest wastewater treatment facilities of its kind in the United States. FAC ¶ 141. The POTW collects wastewater that is discharged by households, commercial businesses and industrial users through the sewer system, treats it at three wastewater treatment plants, and subsequently land applies it across a large, forested area using approximately 19,000 spray heads. *Id.* ¶¶ 143-145. A major reason for the POTW's existence is the large concentration of carpet and flooring manufacturers in northwestern Georgia, including Shaw. FAC ¶¶ 2, 85. Plaintiff earns substantial revenues from industrial users who pay for the privilege of having their wastewater treated at the POTW. In 2023 alone, Plaintiff earned over $24 million in wastewater system revenues. Exhibit A, City of Dalton 2023 Annual Comprehensive Financial Report, pp. 23, 149, 171.[3] Shaw was its largest customer, at 20 percent. *Id.* p. 54.

---

[2]    Shaw incorporates herein the arguments included in the other carpet manufacturers' motions to dismiss Plaintiff's first amended complaint.

[3]    The Court may consider Exhibits A through D without converting this Motion into a motion for summary judgment. Plaintiff's annual financial reports are public records shared on its website at https://www.daltonga.gov/finance/page/annual-comprehensive-financial-report-acfr (last visited May 15, 2025). Public records whose authenticity is not subject to reasonable dispute are judicially noticeable. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); *Hymowitz v. Supreme Lending*, No. 1:20-CV-3763-WMR, 2020 WL 10180768, at *2 (N.D. Ga. Dec. 7, 2020). In addition, the Court may consider documents that are attached to,

The POTW is a "complicated operation that is subject to extensive regulation, permitting, and oversight by the [EPD]." *Id.* ¶ 3. To operate it, Plaintiff requires two permits: (1) the "<u>LAS Permit,</u>" a non-point source permit issued by EPD and (2) the "<u>NPDES Permit</u>", a federal National Pollutant Discharge Elimination System Industrial Stormwater Permit. *Id.* at ¶¶ 147-148; Exhibit B, LAS Permit; Exhibit C, NPDES Permit. As a condition of its permits, Plaintiff enacted a 67-page set of Sewer Rules and Regulations ("SURR"), which it may enforce against "any user of the POTW." *Id.* at ¶ 155; Dkt. 85-1. Among other things, the SURR authorizes Plaintiff to issue Industrial User Permits to major industrial customers. Dkt. 85-1 at § 4.1. Permits are required to state the discharge limits, monitoring, sampling, reporting, notification, and record-keeping requirements set forth in GA DNR Rule 391-3-6-.09(8)(b). *Id.* § 4.6. Plaintiff is authorized to modify permits at its discretion for "good cause". *Id.* § 4.8. Plaintiff also has the power to revoke and reissue permits. *Id*. §§ 4.10, 4.12. Permits must be renewed every five years. *Id*. §§ 4.6.1, 4.6.3.

Plaintiff alleges that for decades, Dalton area carpet manufacturers have made stain and soil resistant carpets using PFAS, a term which refers broadly to a family of manmade chemical compounds known for their resistance to heat, water and

---

referenced in, or central to the allegations of the FAC. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Exhibits B and C, Plaintiff's permits, are referenced in the FAC (*see* FAC ¶¶ 147-148). Exhibit D, Shaw's Industrial User Permits for the Shaw Plants identified in FAC ¶ 93, are central to the FAC's allegations.

stains. FAC ¶ 39. The PFAS compounds are designed, manufactured, and supplied by the Chemical Manufacturers (3M, DuPont, Daikin and Invista) and others. *Id.* ¶ 40. Plaintiff's general allegations against Shaw include that Shaw purchased PFAS-containing products and entered into agreements with the Chemical Manufacturers which allowed Shaw to manufacture stain resistant carpets. *Id.* ¶ 124. Under these agreements, the Chemical Manufacturers imposed specific standards that Shaw had to follow when applying PFAS to carpets and after the treatment was complete. *Id.* ¶¶ 125-126.

In contrast to Plaintiff's generic allegations against Shaw, the Plaintiff specifically alleges that the Chemical Manufacturers were aware for decades that PFAS is persistent in the environment and resisted natural degradation. *Id.* ¶¶ 55-73. This information was concealed from the public, including the Chemical Manufacturers' very own customers, like Shaw. *Id.* ¶¶ 51-72 *generally*; ¶ 61 ("3M took active steps to conceal the environmental risks associated with PFAS"). By at least May, 2000, however, the public was aware of the persistence of PFAS. *Id.* ¶ 74.[4] Not long after that, in 2002, the U.S. Environmental Protection Agency ("EPA") took measures to limit the future manufacture of PFOA and PFOS. *Id.* ¶ 77.

Two years later, in 2004, Plaintiff issued an Industrial User Permit to certain

---

[4]     Shaw believes that the evidence will show that Plaintiff was aware of the risks cited in the FAC earlier than May, 2000, when 3M announced that it was discontinuing the use of PFAS in its Scotchgard line of products.

Shaw Plants identified in the FAC. *See* Ex. D, attached hereto. Despite the known risks that led the EPA to begin regulating PFAS, Plaintiff's permits to Shaw did not mention or regulate PFAS:

B. During the effective period of this permit, the discharge from the above listed outfall(s) shall not exceed the following limitations:

Table 1 - DISCHARGE PERMIT LIMITATIONS

| Parameter | | Limitations | Units | Frequency* | Sample Type |
|---|---|---|---|---|---|
| Wastewater Flow† | | Monitor Only | MGD | Daily | Continuous |
| Biochemical Oxygen Demand | BOD | 525 | lbs/day | Quarterly | Composite |
| Chemical Oxygen Demand | COD | 642 | lbs/day | Quarterly | Composite |
| Ammonia | $NH_3$ | Monitor Only | mg/L | Quarterly | Composite |
| Oil & Grease (Total)^A | | Monitor Only | mg/L | Quarterly | Grab |
| Oil & Grease (TPH)^B | | 200 | mg/L | Quarterly | Grab |
| pH | | 6.0 - 9.0 | std units | Quarterly | Grab |
| Phosphorus | P | Monitor Only | mg/L | Quarterly | Composite |
| Temperature | | 87.7°C / 190°F | degrees | Quarterly | Grab |
| Total Suspended Solids | TSS | 675 | mg/L | Quarterly | Composite |
| Flash Point* | | 65°C / 150°F | degrees | Biannually | Composite |
| Chromium | Cr | 1.0 | mg/L | Biannually | Composite |
| Copper | Cu | 0.6 | mg/L | Biannually | Composite |
| Lead | Pb | 0.10 | mg/L | Biannually | Composite |
| Mercury | Hg | 0.01 | mg/L | Biannually | Composite |
| Nickel | Ni | 0.12 | mg/L | Biannually | Composite |
| Zinc | Zn | 6 | lbs/day | Biannually | Composite |
| Antimony | Sb | Monitor Only | mg/L | Biannually | Composite |
| Arsenic | As | Monitor Only | mg/L | Biannually | Composite |
| Cadmium | Cd | Monitor Only | mg/L | Biannually | Composite |
| Cyanide | CN | Monitor Only | mg/L | Biannually | Composite |
| Molybdenum | Mo | Monitor Only | mg/L | Biannually | Composite |
| Selenium | Se | Monitor Only | mg/L | Biannually | Composite |
| Silver | Ag | Monitor Only | mg/L | Biannually | Composite |

† Flow monitoring is required for industries with any mass-based limits.

^A Method 1664A for n-Hexane Extracted Materials (HEM) through Liquid Liquid Extraction (LLE) will be the required method for reporting Oil & Grease Total (HEM) and can be found in the EPA Analytical Methods

^B Method 1664A Silica Gel Treated n-Hexane Extracted Material (SGT-HEM) will be the required method for reporting Oil & Grease Total Petroleum Hydrocarbons (TPH) and can be found in the EPA Analytical Methods

* If flashpoint Limit is exceeded, volatile testing must be completed on that sample.

Ex. D at p. 56 (excerpt from September, 2024 Permit). As the above excerpt shows, the User Permits are highly specific and carefully tailored to address dangerous pollutants, such as ammonia, lead, mercury and cyanide, *but not PFAS*. Shaw's permits were renewed in July 2009, July 2014, July 2019 and September 2024. *Id.* During that time, Plaintiff admits it learned all of the remaining facts alleged in the FAC, yet Plaintiff continued to impose no limits or conditions relating to PFAS:

| July 1, 2004 | **Plaintiff issues Industrial User Permits to Shaw (Ex. D) with no requirements or prohibitions regarding PFAS.** |
|---|---|
| 2009 | Plaintiff allegedly finds "elevated levels" of PFAS at the POTW, on the LAS and in surrounding waters. (FAC ¶¶ 159, 161, 164. Sampling shows discharges of wastewater containing PFAS from Shaw Plants (FAC ¶¶ 95, 158). |
| July 1, 2009 | **Plaintiff renews Shaw's Permits.** |
| 2010-2013 | Additional sampling from Shaw Plants continues to show presence of PFAS (FAC ¶ 95). |
| July 1, 2014 | **Plaintiff renews Shaw's Permits.** |
| 2016 | Additional sampling from Shaw Plants continues to show presence of PFAS (FAC ¶ 95). |
| July 1, 2019 | **Plaintiff renews Shaw's Permits.** |
| April 10, 2024 | EPA finalizes National Primary Drinking Water Regulation establishing MCLs for six PFAS compounds (FAC ¶ 13). |
| May 8, 2024 | EPA finalizes regulation designating PFOA and PFOS as hazardous substances (FAC ¶ 15). |
| September 1, 2024 | **Plaintiff renews Shaw's Permits, which continue to include no restrictions or limits relating to PFAS.** |

Plaintiff shared the results of its sampling with the EPA and EPD. As Plaintiff specifically alleges, neither EPD nor the EPA has taken any action with respect to PFAS at the LAS. *Id.* ¶ 163. Likewise, there is no allegation that EPD or the EPA has taken any action with respect to PFAS against any Shaw Plants. Plaintiff cites no law or regulation prohibiting the discharge of PFAS. It notes, however, that the

EPA recently finalized a regulation establishing maximum contaminant levels (i.e., drinking water standards) for six types of PFAS. FAC ¶ 13. On May 8, 2024, EPA finalized another regulation designating two types of PFAS (PFOA and PFOS) as "hazardous substances" under CERCLA. *Id.* ¶ 15. Plaintiff alleges that the enactment of these regulations will require it to upgrade its facilities to enable it to treat and remove PFAS. *Id.* ¶ 16.[5]

## LEGAL STANDARD

A complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Lubin v. Cincinnati Ins. Co.*, No. 1:09-cv-2985, 2010 WL 5313754, *3 (N.D. Ga. Dec. 17, 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

---

[5]     On May 14, 2025, the EPA announced that it would rescind the EPA's regulations designating maximum contaminant levels for PFAS other than PFOS or PFOA, and would extend compliance deadlines related to PFOS and PFOA. *See* www.EPA.gov/newsreleases/EPA Announces It Will Keep Maximum Contaminant Levels for PFOA, PFOS | US EPA, (last visited May 15, 2025).

**ARGUMENT**

## I.     Plaintiff Fails to State a Claim Under CERCLA.

To prevail on a cost recovery claim for CERCLA response costs, a plaintiff must adequately allege that a defendant is a member of one or more of the four classes of potentially responsible parties, i.e., a "covered person." 42 U.S.C. § 9607(a). There are four types of covered persons, and only one at issue here: arrangers.[6] Under CERCLA, an arranger is a "person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances . . . at any facility . . . owned or operated by another party or entity." 42 U.S.C. § 9607(a)(3).

CERCLA does not define the phrase "arranged for," leaving this open for judicial interpretation. *South Florida Water Mgmt Dist. v. Montalvo*, 84 F.3d 402, 407-08 (11th Cir. 1996). "Under the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 611 (2009).   Courts in this Circuit have identified specific factors to establish the arranger state-of-mind required to impose liability, including "whether the party intended to dispose of a substance at the time of the transaction . . . and

---

[6]   The FAC acknowledges that Shaw is not otherwise a "covered person," which necessitates dismissal of Counts I and II unless Plaintiff has adequately alleged that Shaw meets the criteria for "arranger" liability.  *See* FAC ¶¶ 9, 41, 176, 183.

whether the party made the 'crucial decision' to place hazardous substances in the hands of a particular facility . . ." *Concrete Sales & Servs., Inc. v. Blue Bird Body Co.*, 211 F.3d 1333, 1336–37 (11th Cir. 2000).

Courts are also clear that contracting for services without requisite control is inadequate alone to establish arranger liability. *See, e.g.*, *Montalvo* at 407-08. In *Montalvo*, the court affirmed the district court's dismissal of CERCLA claims on the basis that the plaintiff did not adequately allege arranger status because the defendants lacked sufficient knowledge or control over the plaintiff's land application practices. Similarly, in *Concrete Sales & Servs., Inc.*, the Eleventh Circuit affirmed the dismissal of a claim for "lack of sufficient knowledge or control of PMI's disposal practices." *Concrete Sales & Servs., Inc.,* 211 F.3d at 1339; *see also Crutchfield Properties, LLLP v. Ashgan Prods., LLC*, No. 4:17-CV-00076-WMR, 2019 WL 12762944, at *5 (N.D. Ga. May 16, 2019) (observing "even if [the parties] did have knowledge of the potential hazardous nature of the materials, that knowledge would be insufficient, by itself, to establish arranger liability . . . Rather, [the parties] must have taken intentional steps [to] or [planned] for the disposal of the hazardous substance[s] at the Mill." (internal citations omitted)).

Here, Plaintiff's attempt to hold Shaw liable as an arranger fails for the simple reason that ***Plaintiff does not allege that Shaw intended to dispose of any hazardous substance*** (PFAS) into the environment within the meaning of 42 U.S.C.

10

§ 6903(3) or had any control over Plaintiff's disposal practices. Plaintiff's theory of CERCLA liability relies entirely on Shaw's lawfully sending wastewater to the POTW – there is no alleged release or spill caused by Shaw.  FAC ¶¶ 93, 94.

To this point, Plaintiff, as the sole owner and operator of the POTW, treats the wastewater before land applying it through the LAS – indeed, "one of the largest land application waste treatment systems in the United States."  FAC ¶¶ 2, 141. Plaintiff is the sole permittee of the LAS Permit and is responsible for all land application activity in compliance with permits and law.  *See* FAC ¶¶ 147, 149-151. There is no allegation that Shaw "assisted" Plaintiff in treating and spraying wastewater at the LAS, or that Shaw had control of the LAS, or the duty to monitor or control the facility. *See Montalvo*, 84 F.3d at 408-09.

Plaintiff has known of PFAS at its facility since at least 2009.  FAC ¶¶ 158-161.  Notwithstanding this knowledge, Plaintiff chose not to act for at least 15 years until it finally "engaged technical consultants" in 2024.  FAC ¶¶ 170-71. The FAC lacks any allegation that Shaw has had any knowledge concerning, or control over, the conditions at the POTW or its treatment or and subsequent land application activities. Moreover, Plaintiff specifically alleges that the Chemical Manufacturers concealed information from Shaw about PFAS, and that Plaintiff was aware of PFAS

issues but did not limit PFAS in the User Permits.[7] FAC ¶¶ 60-61, 232-34, 271-72. *See Crutchfield Props*, 2019 WL 12762944, at *5. The Plaintiff alleges highly specific details regarding the Chemical Manufacturers' knowledge of the harms associated with their PFAS products, but Dalton does not plausibly allege that Shaw had similar knowledge or that the Chemical Manufacturers shared their knowledge with Shaw. *See id.* ¶¶ 48-84.

As such, the allegations are insufficient to demonstrate that Shaw intended to dispose of hazardous substances (PFAS) through the LAS, but instead show Shaw acted in a manner consistent with every other user of the sewer system. Without more, this pleading is insufficient. *Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements" is insufficient to survive a motion to dismiss); *see Montalvo*, 84 F.3d at 407. Because Shaw did not "arrange for" disposal within the meaning of CERCLA, it cannot be held liable under CERCLA.

Moreover, CERCLA plaintiffs are not authorized to recover response costs incurred in connection with federally permitted releases, i.e., those releases that occur in connection with operations pursuant to a federally issued permit. 42 U.S.C.

---

[7] Conversely, Plaintiff's allegations that the Chemical Manufacturers concealed information about PFAS and failed to warn the Carpet Manufacturing Defendants about known environmental risks in the normal use and disposal of their products, coupled with the Chemical Manufacturers' control of the Carpet Manufacturing Defendants' use and application of products supplied, establish the Chemical Manufacturers' liability pursuant to CERCLA. *See* FAC ¶¶ 60-61, 198, 208, 223, 271-72.

§§ 9601(10) (definition of federally permitted release) and 9607(j) (excluding actions under CERCLA for federally permitted releases). Water permits issued by a federal agency or pursuant to delegated authority to a state agency are expressly subject to this exclusion under CERCLA. 42 U.S.C. § 9601(10) (enumerating 11 specific types of permit categories). This specifically includes NPDES permits issued pursuant to Section 402 of the Clean Water Act (i.e., 33 U.S.C. Code § 1342). *Id.* at sections (A), (B), and (C).[8] Rather, CERCLA provides that the recovery of response costs resulting from federally permitted releases shall be "pursuant to existing law in lieu of this section." 42 U.S.C. § 9607(j). Courts reviewing this matter have consistently denied recovery under CERCLA for releases subject to NPDES permits. *See, e.g.*, *Carson Harbor Village, Ltd. v. Unocal Corp.*, 287 F. Supp. 2d 1118, 1184-85 (2003) (granting defendants' motion for summary judgment on the basis that "Defendants' stormwater discharges [under a NPDES permit] from and after 1990 do not give rise to CERCLA liability"); *State of Idaho v. Hanna Mining Co.*, 699 F.Supp. 827, 832 (D. Idaho 1987) (concluding the state was barred from seeking recovery under CERCLA for NPDES permitted outfalls).

---

[8]     At this time on this motion to dismiss, Shaw does not assert that any releases or discharges pursuant to the LAS Permit are barred pursuant to the federally permitted release exception on the basis that Plaintiff alleges that the LAS Permit is a non-point source state permit issued by EPD. (*See, e.g.*, FAC ¶ 147.) That noted, Shaw reserves the right to advance such a theory following discovery.

Plaintiff's own allegations confirm that its POTW operates pursuant to an NPDES Permit issued "by EPD through its delegated authority under the Clean Water Act." (FAC ¶¶ 3, 148). The NPDES Permit and any releases or discharges pursuant to it are federally permitted releases as defined in CERCLA. 42 U.S.C. § 9601(10)(A); *see also* 33 U.S.C. Code § 1342 (authorizing NPDES permits); *see* 40 C.F.R. part 123 (process for State-based NPDES permits under delegated authority); *see* O.C.G.A. § 12-5-30(f) (delegating authority to the State to implement National Pollution Discharge Elimination System general permits). For these reasons, any releases or discharges in connection with the NPDES Permit (and any resulting "response costs") do not give rise to any CERCLA claim against Shaw and Counts I and II should be dismissed to such extent accordingly. *See, e.g., Carson Harbor Village, Ltd.*, 287 F. Supp. 2d at 1184-85 (2003); *State of Idaho*, 699 F.Supp. at 832 (D. Idaho 1987) (concluding the state was barred from seeking recovery under CERCLA for NPDES permitted outfalls).

## II. Plaintiff Fails to State a Claim Under State Law.

### A. Plaintiff's Tort Claims (Counts III, IV and V) Are Barred Because It Consented to Shaw's Discharges.

Plaintiff's tort claims fail because, under well-settled common law principles, it has authorized and consented to Shaw's discharges of wastewater and assumed all risks attendant with the possibility (which Shaw does not concede) that these discharges contained PFAS in amounts sufficient to cause injury.

"No tort can be committed against a person consenting thereto if that consent is free, is not obtained by fraud, and is the action of a sound mind." O.C.G.A. § 51-11-2 (a statute that appeared in Georgia's first code of 1863). Similarly, the torts of nuisance and trespass do not apply when the conduct in question is authorized.[9] The allegations of the FAC demonstrate that Plaintiff consented to and authorized any discharges of PFAS of Shaw by routinely issuing and renewing Shaw's User Permits for decades. *See* Ex. D. Permits, like contracts, are enforced according to their clear, unambiguous terms. *See Altamaha Riverkeeper, Inc. v. Rayonier, Inc.*, 2015 WL 1505971, *4 (S.D. Ga. Mar. 31, 2015); *see also Jones Creek Investors, LLC v. Columbia Cty.*, 98 F.Supp.3d 1279, 1299 (S.D. Ga. 2015) (permits are construed in the same manner as contracts). Here, the User Permits unambiguously state that Shaw "is authorized to discharge industrial wastewater from the above identified facility and through the outfalls identified herein into the [POTW] in accordance with the terms and conditions set forth in this permit." Ex. D at pp. 3, 34, 45, 55. There is no term or condition purporting to regulate PFAS. Ex. D. In light of the

---

[9]    *See Effingham Cty. Bd. Of Comm'rs v. Shuler Bros., Inc.*, 265 Ga. App. 754, 755 (2004) ("That which the law authorizes to be done, if done as the law authorizes, cannot be a nuisance"); *Anderson v. Atlanta Comm. For Olympic Games, Inc.*, 261 Ga. App. 895, 900 (2003) (same); *City of Douglasville v. Queen*, 270 Ga. 770, 773 (1999) (same); *Newman Mfg. Co. v. Young*, 109 Ga. App. 763, 763 (1964) (consent or a valid license "is a good defense to an action for trespass for acts done within the scope of the license"); *Irving v. Dish Network LLC*, 2012 WL 12875684, *1 (N.D. Ga. Oct. 23, 2012) (same).

User Permits' broad, unambiguous grant of authority and under settled principles of construction, the absence of any reference to PFAS signals a clear intent that Shaw not be required to monitor or limit PFAS. *See Monumedia II, LLC v. Dep't of Trans.*, 343 Ga. App. 49, 58 (2017) (citing *"expression unius est exclusion alterius"* and *"expressum facit cessare tacitum"*, translating to "expression of one thing implies exclusion of another" and "if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded," respectively).

Plaintiff alleges that it could not have consented to the discharge of PFAS because "for many years, [it] did not now that PFAS was a constituent in wastewater disposed of at the POTW, and even after it learned that PFAS was present in the waste streams coming to the POTW, [it] lacked knowledge of the environmental risks regarding PFAS." FAC ¶¶ 199, 212, 226. But as Plaintiff concedes, the Plaintiff knew that PFAS was in the wastewater entering the POTW in 2009, and even the *public* has known since at least May, 2000, that the chemicals used in 3M's Scotchgard line were "very persistent in the environment, have a strong tendency to accumulate in human and animal tissues and could potentially pose a risk to human health and the environment over the long term." *Id*. ¶¶ 74-75. Since then, Plaintiff issued or renewed Industrial User Permits to Shaw *five times*, and never modified them to regulate PFAS, even as further information came to light. See *supra* Ex. D at p. 56. Plaintiff need not have had perfect knowledge of the facts for the doctrines

of consent to apply. *See Hull v. Merck & Co., Inc.*, 758 F.2d 1474, 1477 (11th Cir.1985) (holding that "perfect knowledge [of the nature and extent of the threat posed] is not necessary" for the assumption of risk doctrine to apply); *Pan E. Expl. Co. v. Hufo Oils*, 855 F.2d 1106, 1129 (5th Cir. 1988) ("[C]onsent to a tort can arise even without absolute certainty as the occurrence of the tort."). In addition, Plaintiff does not allege, nor could it allege, that it was powerless to accept wastewater containing PFAS. To the contrary, Plaintiff has significant powers under the permits and the SURR to regulate PFAS.

To the extent Plaintiff argues that it is constrained by state law from regulating PFAS through the permits and the SURR, Plaintiff is bound by the State's consent as a political subdivision of the State. FAC ¶ 247 (Plaintiff is a political subdivision of the State); *Penick v. Foster*, 129 Ga. 217 (1907) (a municipality is "a mere political subdivision of the state."). The State has the ultimate responsibility under the GWQCA to establish standards for water quality. *See Franklin Cty. v. Fieldale Farms Corp.*, 270 Ga. 272, 275 (1998). The State has consented to the discharge of PFAS-laden wastewater to the POTW by continually allowing Plaintiff to operate it under the LAS Permit despite the knowledge it obtained regarding PFAS levels at the POTW since at least 2009. FAC ¶ 163; *Stallings v. Cuttino*, 285 Ga. App. 581, 582 (1992) ("[I]n by far the greater number of cases, the consent to assume the risk has not been a matter of express agreement, but has been found to be implied from

the conduct of the plaintiff under the circumstances.").

## B.    Plaintiff's Tort Claims Are Also Inadequately Pled.

Plaintiff's tort claims also fail to plead elements necessary to state a claim.

### 1.    Plaintiff Does Not Plausibly Allege that Shaw Owed a Duty, and Thus Plaintiff's Negligence Claim Must be Dismissed.

Plaintiff's negligence claim fails because the FAC fails to plead a legally cognizable duty as to Shaw. The threshold issue in any negligence action is "whether, and to what extent, the defendant owes the plaintiff a duty of care." *Diamond v. Dep't of Trans.*, 326 Ga. App. 189, 194 (2014). This is a question of law. *See id.; Sheaffer v. Marriott Int'l, Inc.*, 349 Ga. App. 338, 340 (2019); *Robinson v. Bird Rides Inc.*, 2020 WL 2129241, *2 (N.D. Ga. May 5, 2020) (dismissing complaint for failure to plead existence of duty).

Plaintiff alleges that Shaw owed duties to "exercise due and reasonable care in [its] use, handling and disposal of PFAS-containing products and wastewater containing PFAS" and "not to contribute any pollutant or wastewater to the POTW that inhibits or disrupts the POTW, its treatment processes or operations, or causes a violation of the LAS Permit." FAC ¶¶ 190-191. These alleged duties are not based on any statute or recognized common law principle. Moreover, such a duty cannot plausibly be inferred from the relationship between the parties, which is *contractual* in nature and that of a municipal wastewater facility and its permittee. Shaw's

obligations related to providing wastewater to Plaintiff are set forth in its contracts. *See e.g.* Ex. D. Shaw's User Permits set forth the precise obligations that Shaw has to monitor and remove contaminants from its wastewater.[10]

Under Georgia law, Plaintiff cannot expand these particular duties or allege that any alleged breach of those contractual duties supports a tort claim.[11]

To state a claim for negligence, Plaintiff must identify "either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized

---

[10]    Plaintiff separately alleges the Chemical Manufacturers independently "owed Dalton Utilities a duty not to supply products containing PFAS." FAC ¶ 153. It is well-established that "a manufacturer has a duty to exercise reasonable care in manufacturing its products so as to make products that are reasonably safe for intended or foreseeable uses." *Morgan v. Dick's Sporting Goods, Inc.*, 359 F. Supp. 3d 1283, 1289 (N.D. Ga. 2019) (denying manufacturer's motion to dismiss negligence claim). But Plaintiff does not and cannot allege that Shaw violated a similar duty here.

[11]    *See Morrison v. Exxonmobil Corp.*, 1:03-CV-140 (WLS), 2005 WL 2406057 at *5 (M.D. Ga. Sept. 28, 2005). *See also* O.C.G.A. § 51-1-1 ("A tort is the unlawful violation of a private legal right *other than a mere breach of contract*, express or implied. . ."); *Minaird v. Citimortgage, Inc.*, No. 113CV00152JECWEJ, 2013 WL 12109495, at *5 (N.D. Ga. July 26, 2013), *report and recommendation adopted,* No. 1:13-CV-152-JEC-WEJ, 2014 WL 12546414 (N.D. Ga. Feb. 3, 2014) ("Georgia law is clear that mere contractual duties do not give rise to tort liability."); *Delancy v. St. Paul Fire & Marine Ins. Co.*, 947 F.2d 1536, 1545 (11th Cir. 1991) ("Under Georgia law, a plaintiff may not sue in tort for a defendant's mere breach of a duty imposed by a contract."); *Sheppard v. Yara Engineering Corp.*, 248 Ga. 147, 149, 281 S.E.2d 586, 587 (1981) ("an action in tort may not be maintained for what is a mere breach through non-action or through ineffective performance (which is the same thing) of a contract duty"); *Servicemaster Co., L.P. v. Martin,* 252 Ga.App. 751, 556 S.E.2d 517 (2001)(same, and holding "[f]rom these facts it is clear that in the absence of its contractual duties" the defendant had breached no independent duty owed to the Plaintiff.).

common law principle declared in the reported decisions of our appellate courts."

*Sheaffer*, 349 Ga. App. at 340. The duty must be specific—there is no "general legal

duty to all the world not to subject others to an unreasonable risk of harm."

*Department of Labor v. McConnell*, 305 Ga. 812, 816 (2019) (internal punctuation

omitted). "No matter how innocent the plaintiff may be, he is not entitled to recover

unless the defendant did something that it should not have done, or failed to do

something that it should have done *pursuant to the duty owed the plaintiff*." *Queen*,

270 Ga. at 771.

Moreover, even under a foreseeability analysis (not applicable here), Shaw

cannot reasonably be expected to know what unregulated chemicals might cause a

violation of Plaintiff's LAS Permit, or otherwise cause harm to Plaintiff. "When

assessing the extent to which one owes a duty to another and whether he has

breached that duty, 'the governing consideration is what the person sought to be

charged should reasonably have foreseen, the rule being that one is bound to

anticipate the reasonable and natural consequences of his own conduct.'" *Porch v.

Wright*, 116 Ga. App. 138, 138 (1967).

Plaintiff's last alleged duty, which is "not to intentionally or negligently cause

or permit any industrial waste or other substance to be discharged into the water of

the state resulting in a condition of pollution," parrots the GWQCA's civil liability

provision. FAC ¶ 93; O.C.G.A. § 12-5-51. As noted in Part II.C *infra*, however, the

GWQCA does not apply to permittees like Shaw. In addition, Plaintiff is not within the class of people that Section 12-5-51 was intended to protect. The overarching purpose of the GWQCA is to protect the "waters of the state," not the private property of municipal utility companies.

### 2. Shaw Did Not Control the Alleged Nuisance, and Thus Plaintiff's Nuisance Claim Must Be Dismissed.

Plaintiff's nuisance claim fails for the additional reason that the allegations of the FAC do not establish that Shaw controlled the alleged nuisance. "The essential element of nuisance is control over the cause of the harm." *Grinold v. Farist*, 284 Ga. App. 120, 122 (2007); *Gatto v. City of Statesboro*, 312 Ga. 164, 171 (2021) (nuisance requires "dominion or control over the property giving rise to the alleged nuisance whether by virtue of ownership or the assumption of responsibility for its maintenance or operation."). Control is necessary for proximate cause to exist. *See Terry v. Catherall*, 337 Ga. App. 902, 905 (2016); *Alexander v. Hulsey Env. Svcs., Inc.*, 306 Ga. App. 459, 461-62 (2010).

The allegations in the FAC conclusively establish that the operations of the POTW—the site of the nuisance—are controlled entirely by Plaintiff and the State. Plaintiff, not Shaw, determines the terms and conditions under which Shaw may discharge water to the POTW. Plaintiff, not Shaw, exercises total control over its facilities, technologies and processes for treating wastewater, subject only to the

terms of its permits and state law. Shaw has no alleged (or real) ability or right to amend Plaintiff's terms and conditions or to repair any part of the POTW deemed to be unfit to treat and remove PFAS.[12] Under similar circumstances, the Georgia Court of Appeals held that customers of a waste disposal company could not be liable for a nuisance located at the facility because of their lack of control over the operations of that facility. *See Alexander,* 306 Ga. App. at 461-62; *see also Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, 1986 WL 12447, *6 (M.D. Ga. Mar. 9, 1986) (asbestos manufacturers could not be liable for nuisance because they lacked the legal right to enter the contaminated buildings and remove asbestos products). Because of the lack of control, the plaintiff could not show proximate cause. *Id.*

> **3.    Plaintiff's Trespass Claim Should be Dismissed Because Plaintiff Fails to Allege Unlawful Conduct on the Part of Shaw.**

The FAC fails to state a claim for trespass for the additional reason that it fails to allege unlawful conduct. *See Georgia-Pacific Consumer Prods., LP v. Ratner*, 345 Ga. App. 434, 444 (2018) (lawful operation of manufacturing plant could not support trespass claim based on hydrogen sulfide emissions from plant onto

---

[12]     The FAC alleges that the Chemical Manufacturers created a nuisance through their sale of PFAS with knowledge of the environmental risks, *see* FAC ¶ 208, but this allegation is not made against Shaw. Nor could Plaintiff attempt to base control on Shaw's knowledge about PFAS, since the FAC specifically alleges that the Chemical Manufacturers concealed the alleged environmental risks from both Plaintiff *and* Shaw. FAC ¶¶ 55-73.

plaintiffs' property); *DeSarno v. Jam Golf Mgmt., LLC*, 295 Ga. App. 70 (2008); *Chronister v. City of Atlanta*, 99 Ga. App. 447, 447-48 (1959) (trespass claim could not be brought against airlines acting lawfully within federal regulations). The FAC's trespass allegations are based on Shaw's lawful operation of the Shaw Plants and its disposal of wastewater in accordance with its User Permits. In addition, Plaintiff does not allege that Shaw had any legal right or duty to terminate the cause of the alleged injuries. *See Briggs & Stratton Corp. v. Concrete Sales & Svcs., Inc.*, 971 F. Supp. 566, 573 (M.D. Ga. 1997).

### C. Plaintiff Fails to State a Claim Under the GWQCA (Count VII).

Plaintiff's claim under the GWQCA also fails, because both Shaw and Plaintiff hold valid permits to conduct their activities, and there is no allegation that either Shaw or Plaintiff has violated their permits. The GWQCA does not extend liability to customers of wastewater treatment facilities operating under valid permits, which Shaw was and is doing. *See In re James P. Campbell, III and Sydney Station Farms, Inc.*, 1996 WL 226069, *8 (Office of State Admin. Hearings, April 30, 1996) ("The Act makes an exception for discharges that are permitted by an authorized permitting authority."); *Save America's Vital Environment, Inc. v. Butz*, 347 F. Supp. 521, 522 (N.D. Ga. 1972) (noting the GWQCA "prohibits the discharge of harmful or toxic materials in Georgia waters **without a permit**.") (citing O.C.G.A. § ) (emphasis added); *Jones Creek Inv., LLC v. Columbia Cty.*, 2013 WL 12141348,

*2 (S.D. Ga. Dec. 23, 2013) ("GWQCA prevents the discharge of pollutants from point sources into waters of the state *without a permit*.") (emphasis added). Accordingly, the GWQCA's civil liability provisions do not apply.

Plaintiff's claim for civil liability under the GWQCA fails for the additional reason that it does not allege that Shaw caused PFAS to be "spilled, discharged or deposited in the waters of the state" as required for liability under O.C.G.A. § 12-5-21(a). The term "waters of the state" refers to public waterways such as rivers, streams and creeks. O.C.G.A. § 12-5-22(13). The FAC alleges that Shaw discharged water through Plaintiff's sewer system to Plaintiff, who treated it and then sprayed it across its own property. Section 12-5-21(a) cannot reasonably be interpreted to include the transfer of waste to a waste handling facility that is lawfully authorized to handle waste. Indeed, the entire purpose of building a sewer system and operating the POTW under a valid state permit is to avoid pollutants being spilled, discharged or deposited into the waters of the State.

### D.  Plaintiff's Claims For Punitive Damages (Count VI) And Attorneys' Fees (Count X) Should Be Dismissed As Well.

Finally, Plaintiff's claims for punitive damages under O.C.G.A. § 51-12-5.1 and attorneys' fees under O.C.G.A. § 13-6-11 fail because they are dependent on the existence of a valid underlying claim. *See Sparra v. Deutsche Bank Nat. Tr. Co.*, 336 Ga. App. 418, 422-23 (2016) (plaintiff not entitled to either punitive damages or

attorneys' fees because substantive claims failed); *Jefferson v. Houston Hosps., Inc.*, 336 Ga. App. 478, 488 (2016) (same).

In addition, the allegations specific to Shaw fail to support an inference that it acted with the "willful misconduct, malice, fraud, wantonness, oppression, or []entire want of care" required for a punitive damages claim under O.C.G.A. § 51-12-5.1 or the bad faith required for an award of attorneys' fees under O.C.G.A. § 13-6-11. Plaintiff does not include Shaw among those defendants who are alleged to have concealed the environmental impact of PFAS. To the contrary, Plaintiff alleges that the Chemical Manufacturers concealed this information from both Plaintiff and Shaw. FAC ¶¶ 55-73. The FAC further alleges that no violation of law has occurred. *Id.* ¶ 162. Compliance with the law tends to show that the standard of conduct needed for punitive damages cannot be shown through clear and convincing evidence. *See Stone Man, Inc. v. Green*, 263 Ga. 470, 471-72 (1993) ("[P]unitive damages, the purpose of which is to 'punish, penalize or deter' are, as a general rule, improper where a defendant has adhered to environmental and safety regulations.'").

## CONCLUSION

For these reasons, Shaw respectfully requests that the Court dismiss the FAC's claims against Shaw in their entirety.

Date: May 16, 2025.     */s/ Jennifer B. Dempsey*
                        Jennifer B. Dempsey
                        Georgia Bar No. 217536
                        Michael P. Carey

Georgia Bar No. 109364
Christopher P. Galanek
Georgia Bar No. 282390
Christian J. Bromley
Georgia Bar No. 206633
BRYAN CAVE LEIGHTON PAISNER LLP
One Atlantic Center – 14th Floor
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Telephone:      (404) 572-6600
Facsimile:      (404) 572-6999
jennifer.dempsey@bclplaw.com
michael.carey@bclplaw.com
chris.galanek@bclplaw.com
christian.bromley@bclplaw.com

*Counsel for Defendants Shaw Industries, Inc.
and Shaw Industries Group, Inc.*

## CERTIFICATION UNDER L.R. 7.1.D.

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D., the undersigned counsel certifies that the foregoing filing is a computer document and was prepared in Times New Roman 14 point font, as mandated in Local Rule 5.1.C.

*/s/ Jennifer B. Dempsey*
Jennifer B. Dempsey
Georgia Bar No. 217536

THE CITY OF DALTON, GEORGIA
ACTING THROUGH ITS BOARD OF
WATER, LIGHT AND SINKING
FUND COMMISSIONERS D/B/A
DALTON UTILITIES,

     Plaintiff,

v.

3M COMPANY, ET AL.,

     Defendants.

Civil Action No.:
4:24-cv-00293-WMR

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 16, 2025, I electronically filed the

foregoing **MEMORANDUM OF LAW IN SUPPORT OF SHAW INDUSTRIES**

**GROUP, INC. AND SHAW INDUSTRIES, INC.'S MOTION TO DISMISS**

**PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of Court by

using the CM/ECF system which has notified all counsels of record.

        */s/ Jennifer B. Dempsey*
        Jennifer B. Dempsey
        Georgia Bar No. 217536
        **BRYAN CAVE LEIGHTON PAISNER LLP**
        One Atlantic Center – 14th Floor
        1201 West Peachtree Street NW

Atlanta, Georgia 30309
Telephone:      (404) 572-6600
Facsimile:      (404) 572-6999
Email: jennifer.dempsey@bclplaw.com

*Counsel for Defendants Shaw Industries, Inc.*
*and Shaw Industries Group, Inc.*