**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | |
|---|---|
| The City of Dalton, Georgia, acting through its Board of Water, Light and Sinking Fund Commissioners, d/b/a Dalton Utilities,<br><br>       Plaintiff,<br><br>v.<br><br>3M Company; Daikin America, Inc.; EIDP, Inc. f/k/a E.I. DuPont de Nemours and Company; The Chemours Company; INV Performance Surfaces, LLC; Aladdin Manufacturing Corporation; Shaw Industries Group, Inc.; Shaw Industries, Inc.; and DOES 1–10,<br><br>       Defendants. | Civil Action No. 4:24-cv-00293-WMR |

## <u>JOINT PRELIMINARY REPORT AND DISCOVERY PLAN</u>

Pursuant to Federal Rules of Civil Procedure 16 and 26 and Local Rule 16.2,

Plaintiff The City of Dalton, Georgia, acting through its Board of Water, Light and

Sinking Fund Commissioners, d/b/a Dalton Utilities ("Dalton Utilities") and

Defendants 3M Company ("3M"); Daikin America, Inc. ("Daikin"); EIDP, Inc. f/k/a

E.I. DuPont de Nemours and Company ("EIDP") and The Chemours Company

("Chemours") (EIDP and Chemours together, "DuPont")[1]; INV Performance Surfaces, LLC ("INV" or "Invista"); Aladdin Manufacturing Corporation ("Aladdin"); and Shaw Industries Group, Inc. and Shaw Industries, Inc. (Shaw Industries Group, Inc. and Shaw Industries, Inc. together, "Shaw")[2] respectfully submit this Joint Preliminary Report and Discovery Plan in the above-styled matter, and state as follows:

**1.      Description of Case:**

(a)      *Describe briefly the nature of this action.*

Plaintiff's Description of the Action

This case concerns the contamination of Dalton Utilities' wastewater treatment operations with per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctanesulfonic acid ("PFOS"). Dalton Utilities must make significant and costly changes to its publicly owned treatment works ("POTW") as a result of new federal regulations related to PFAS and its obligations under a state-issued permit.   Dalton Utilities alleges that Defendants actions have caused Dalton Utilities' POTW to be contaminated with PFAS and are therefore liable under the Comprehensive Environmental Response,

---

[1] 3M, DuPont, and Daikin are referred to collectively as the "PFAS Manufacturing Defendants."   Invista, 3M, DuPont, and Daikin are referred to collectively as the "Supplier Defendants."
[2] Aladdin and Shaw are referred to collectively as the "Carpet Manufacturing Defendants."

Compensation, and Liability Act ("CERCLA") and state law for the costs that Dalton Utilities has incurred and will incur to remediate its property.

Carpet Manufacturing Defendants' Description of the Action

Dalton Utilities has brought this suit asserting CERCLA and various state law claims seeking to recover the costs to remediate its Land Application Site ("LAS") in light of the presence of PFAS at the LAS. The Carpet Manufacturing Defendants deny liability for such costs because Dalton Utilities' claims against them fail both legally and factually and for other reasons discussed below.

Supplier Defendants' Description of the Action

Dalton Utilities has brought this suit asserting CERCLA and various state law claims seeking to recover the costs to remediate its Land Application Site ("LAS") in light of the presence of PFAS at the LAS. As discussed below, the Supplier Defendants deny liability for such costs because Dalton Utilities' claims against them fail both legally and factually, and this Court has also dismissed the CERCLA and certain state law claims against Daikin (ECF No. 162).

> (b)    *Summarize the facts of this case. The summary should not be argumentative nor recite evidence.*

Plaintiff's Summary of the Facts

Dalton Utilities is a municipal utility that operates a POTW comprised of wastewater treatment plants where wastewater is treated before being land-applied at the Riverbend Land Application System ("LAS"). Since the 1970s, the City of

Dalton has been a world leader in carpet production, and carpet manufacturing companies such as the "Carpet Manufacturing Defendants for decades applied PFAS to their products to impart stain- and soil-resistant properties.  The Carpet Manufacturing Defendants purchased PFAS and PFAS-containing products from 3M, DuPont, Daikin, and Invista.  As a result of the Defendants' manufacturing operations and disposal practices, significant industrial wastewater containing PFAS was sent to the POTW for disposal.

Recent changes to federal regulations have required Dalton Utilities to initiate costly and large-scale changes to the POTW to remedy the significant PFAS contamination there.  Among these changes, the U.S. Environmental Protection Agency ("EPA") designated PFOA and PFOS hazardous substances under CERCLA and set Maximum Contaminant Level ("MCL") standards on PFOA and PFOS in drinking water.  Under a state permit issued by the Georgia Environmental Protection Division ("EPD") that governs Dalton Utilities' operation of the LAS, groundwater leaving the boundaries of the LAS cannot exceed MCLs.  To remedy the contamination, Dalton Utilities has initiated a cleanup action in accordance with CERCLA and now seeks to recover costs already spent on those efforts and obtain a declaratory judgment allocating liability for future costs.

Dalton Utilities also alleges claims for negligence, nuisance, trespass, punitive damages, violation of the Georgia Water Quality Control Act, O.C.G.A. § 12-5-20,

*et seq.*, and expenses of litigation under O.C.G.A. § 13-6-11 against all Defendants. Additionally, Dalton Utilities alleges claims for negligent design and negligent failure to warn against the PFAS Manufacturing Defendants and Invista. Broadly, these claims are based on the PFAS Manufacturing Defendants' and Invista's knowledge of the environmental risks of their PFAS-containing products years before they were publicly known, and failure to disclose those risks to Dalton Utilities, the Carpet Manufacturing Defendants, regulators, and the public. Notwithstanding their knowledge of the risks associated with their products, for decades, the PFAS Manufacturing Defendants and Invista sold millions of pounds of PFAS-containing products to the Carpet Manufacturing Defendants. Additionally, the PFAS Manufacturing Defendants and Invista exercised control over the Carpet Manufacturing Customers' use and disposal of PFAS-containing products. Moreover, 3M, DuPont, and Invista each operated laboratories that discharged PFAS-containing wastewater to the POTW. Defendants failed to take reasonable steps to prevent the disposal of harmful PFAS through their wastewater.

Carpet Manufacturing Defendants' Summary of the Facts

The Carpet Manufacturing Defendants—Aladdin and Shaw—are two separate carpet and flooring manufacturers based in Georgia, with certain manufacturing facilities located in Dalton, Georgia. For decades, Aladdin and Shaw purchased certain chemical products from the PFAS Manufacturing Defendants—

5

3M, DuPont, and Daikin—in order to impart stain and soil resistance qualities to carpet manufactured at certain of their facilities, including facilities in Dalton. As it turns out, some of the products designed, manufactured, and sold by the PFAS Manufacturing Defendants contained or degraded to certain types of PFAS—namely PFOS and PFOA. The PFAS Manufacturing Defendants did not disclose to the Carpet Manufacturing Defendants the chemical composition of those products and often withheld information as confidential, trade secrets, or other related protections.

As Dalton Utilities' Complaint acknowledges, for decades, the PFAS Manufacturing Defendants also knew about but concealed the potential environmental effects of their PFAS products from the Carpet Manufacturing Defendants and the public at large. The PFAS Manufacturing Defendants also closely controlled and monitored the product application process in the carpet mills, which necessarily resulted in wastewater containing PFAS being sent to Dalton Utilities. Despite their unparalleled knowledge of the potential environmental effects of their products and full knowledge of the fate and transport of PFAS in the environment, the PFAS Manufacturing Defendants never instructed the Carpet Manufacturing Defendants to alter their wastewater disposal practices.

Following the chemical application systems and process established by the PFAS Manufacturing Defendants for these products, the Carpet Manufacturing Defendants discharged their wastewater to Dalton Utilities pursuant to industrial

6

wastewater permits issued by Dalton Utilities, who then treated the wastewater (for considerable fees) and then sprayed it over its land application system (the "LAS"). As part of the permitting process, the Carpet Manufacturing Defendants disclosed the specific chemicals used in their carpet manufacturing processes, and Dalton Utilities routinely inspected the carpet mills and observed the relevant processes. Dalton Utilities further admits that it was aware of the presence of PFAS in the wastewater it received by no later than 2009. Despite that, the permits issued by Dalton Utilities never regulated PFAS (a fact that remains true today), and Dalton Utilities does not allege anywhere within its Complaint that the Carpet Manufacturing Defendants have violated their permits.

Dalton Utilities has nevertheless sued the Carpet Manufacturing Defendants—asserting CERCLA and state law claims—seeking the cleanup costs that it has already incurred in connection with the LAS, as well as a declaratory judgment allocating liability for future cleanup costs. The Carpet Manufacturing Defendants deny liability for such costs.

Supplier Defendants' Summary of the Facts

3M, DuPont, Daikin, and INV sold certain fluorochemical surface treatments to companies manufacturing carpet. These were lawful and useful products sold at arms-length to sophisticated carpet manufacturers like Aladdin and Shaw in the Dalton, Georgia area. The persistent nature of the carbon-fluorine bond has always

been well understood by chemists, and scientific studies showing the potential for certain PFAS to bioaccumulate were published in the 1980s and 1990s. In 1999, the Carpet Manufacturing Defendants and the industry trade group Carpet & Rug Institute were expressly informed that certain fluorochemical soil-resistance products could contain or degrade to PFOS and that PFOS was persistent and bioaccumulative, though studies of workers with high exposure had revealed no apparent health effects.

Dalton Utilities had an obligation to understand the contents of its industrial users' wastewater discharges and the responsibility to regulate those discharges through permits, while the dischargers themselves, the Carpet Manufacturing Defendants, had an obligation to disclose the contents of their effluent. Dalton Utilities has denied that the Carpet Manufacturing Defendants passed along any information about the use of the products, and the Carpet Manufacturing Defendants deny that the Supplier Defendants gave them any information about those products. The Supplier Defendants dispute this. In addition to publicly available materials, the Supplier Defendants provided information about their products directly to the Carpet Manufacturing Defendants through Material Safety Data sheets and otherwise. As for Dalton Utilities, it was aware of PFAS in its water system by no later than 2008. Despite that knowledge, Dalton Utilities never regulated PFAS discharges through its permitting process. There are multiple other sources of PFAS in the Dalton

system, including contemporaneous sources of C8-based compounds, and recent testing has shown that PFOA and PFOS continue to be present in materials used in the carpet production industry more than a decade after any Supplier Defendant last sold those products.

- Specific statements by the Supplier Defendants:

  o For 3M: In 1999, 3M had face to face and written communications with the Carpet Manufacturing Defendants about the potential of perfluorooctanyl-based compounds to bioaccumulate. In 2000, 3M publicly announced a phase-out of perfluorooctanyl-based products, and 3M's last sale of C8-based products in Dalton was in 2002. 3M's discharges of fluorochemical products and non-fluorinated stain blocker from its small testing laboratory in Dalton were de minimis—on the order of under 400 pounds per year. 3M sold lawful and useful fluorochemical products. 3M cannot be held liable as an arranger under CERCLA for commercial sales of useful products. Further, the Carpet Manufacturing Defendants are sophisticated entities, and 3M had no control over their use or disposal of fluorotelomer products or wastewater handling.

  o For DuPont: DuPont sold lawful and useful fluorotelomer products that may have contained trace levels of PFOA as an unintended

9

impurity to the Carpet Manufacturing Defendants. As a manufacturer of useful and legal products, DuPont cannot be held liable as an arranger under CERCLA. Further, the Carpet Manufacturing Defendants are sophisticated entities, and DuPont had no control over their use or disposal of fluorotelomer products or wastewater handling. Nor did DuPont control the application of fluorotelomer products to carpet, which is a completely separate process from handling and disposal of wastewater; at most, DuPont provided guidance to the Carpet Manufacturing Defendants about how to apply these chemicals to carpet, but they were ultimately responsible for applying the chemicals to carpet. Moreover, DuPont did not manufacture fluorinated carpet chemistry or carpet in Dalton and did not discharge wastewater from the carpet manufacturing process to the Conasauga River.

o For Daikin: Daikin maintains no facilities and controls no land in or around Dalton, Georgia, has never discharged any PFAS to the Dalton Utilities POTW, and does not maintain any customer or contractual relationship with Dalton Utilities. Daikin sold lawful and useful products containing PFOA as an unintended impurity to the Carpet Manufacturing Defendants, but as this Court previously

acknowledged in dismissing certain claims against Daikin (*see* ECF No. 162), Daikin had no authority or control over how the Carpet Manufacturing Defendants used or disposed of Daikin's products. Daikin did not own or lease any equipment or maintain any personnel at the Carpet Manufacturing Defendants' facilities and did not have any contractual oversight of the application of its products or the disposal of PFAS residue by the Carpet Manufacturing Defendants. At most, Daikin provided Carpet Manufacturing Defendants advice about the proper handling and disposal of its products. Daikin never sold the Carpet Manufacturing Defendants products containing PFOS; PFOA was found in Daikin products only as an unintended trace impurity; and Daikin consistently offered non-fluorinated products to the Carpet Manufacturing Defendants for over a decade.

o For INV: It is undisputed that INV was not a manufacturer of PFAS and is not a "PFAS Manufacturing Defendant." Instead, INV was a purchaser and intermediate supplier of fluorochemicals alleged to be at issue in this case. It will be undisputed that the products INV supplied were new and useful. As such, INV's supply of products cannot give rise to arranger liability under CERCLA. It is also

11

undisputed that INV did not exist until 2004. By that time, the alleged environmental risks of PFAS were known to both Dalton Utilities and INV's Dalton-area carpet manufacturer customers, and there was no disparity of PFAS-related knowledge between INV and these parties. INV's carpet manufacturer customers were sophisticated third parties, and INV had no control over their use or disposal of PFAS-containing products or handling of their wastewater. Moreover, INV did not discharge PFAS in wastewater from its own Dalton-area laboratory facility. Dalton Utilities has sampled various POTW users' wastewater for PFAS numerous times over the course of nearly 20 years, yet has no sampling showing that INV's laboratory facility ever discharged PFAS. As such, there are no facts to support any of Dalton Utilities' CERCLA arranger liability theories or state law claims with respect to INV.

Dalton is now asserting CERCLA claims against Supplier Defendants 3M, DuPont, and INV, and state law claims against all of the Supplier Defendants. The Supplier Defendants deny liability for any costs associated with the claims.

(c)    *The legal issues to be tried are as follows:*

For Plaintiff

The legal issues include, but are not necessarily limited to, the following:

12

- Whether Defendants are liable under CERCLA for the disposal of hazardous substances to Dalton Utilities' POTW;

- Whether Dalton Utilities is entitled to a declaratory judgment regarding liability for response costs and damages under CERCLA;

- Whether Defendants acted negligently by causing and contributing to the contamination of Dalton Utilities' property;

- Whether Defendants caused a nuisance that contaminated Dalton Utilities' property;

- Whether Defendants trespassed on Dalton Utilities' property by discharging PFAS-containing wastewater to the POTW, or controlling the discharge of PFAS-containing wastewater to the POTW;

- Whether Defendants violated the Georgia Water Quality Control Act by intentionally or negligently causing industrial waste or other substance to be spilled, discharged, or deposited in the waters of the state on and around Dalton Utilities' LAS;

- Whether 3M, DuPont, Daikin, and Invista negligently designed PFAS and PFAS-containing products, causing damage to Dalton Utilities' property; and

- Whether 3M, DuPont, Daikin, and Invista negligently failed to warn Dalton Utilities of the known and reasonably foreseeable risks inherent in the disposal

of PFAS and PFAS-containing products, causing damage to Dalton Utilities' property.

Additional legal issues may arise as the case progresses.

<u>For Carpet Manufacturing Defendants</u>

While Dalton Utilities and the Supplier Defendants identify some of the legal issues to be tried, the Carpet Manufacturing Defendants also identify the following:

- Whether Dalton Utilities' claims are barred by the doctrine of preemption;

- Whether and the extent to which Dalton Utilities is responsible for the damages that it seeks pursuant to CERCLA;

- Whether and the extent to which Dalton Utilities should be allocated fault for the damages it seeks pursuant to its state law claims;

- Whether and the extent to which the PFAS Manufacturing Defendants are responsible for the damages that Dalton Utilities seeks pursuant to CERCLA;

- Whether and the extent to which the PFAS Manufacturing Defendants should be allocated fault for the damages Dalton Utilities seeks pursuant to its state law claims;

- Whether and the extent to which any other Defendants or third parties (including those not yet joined to this action) are responsible for the damages that Dalton Utilities seeks pursuant to CERCLA; and

- Whether and the extent to which any Defendants or third parties should be allocated fault for the damages Dalton Utilities seeks pursuant to its state law claims.

Additional legal issues may arise as the case progresses.

<u>For Supplier Defendants</u>

While Dalton Utilities and the Carpet Manufacturing Defendants identify some of the legal issues to be tried, the Supplier Defendants also identify the following:

- Whether the injuries alleged by Plaintiff are cognizable under federal and Georgia law;

- Whether any Defendant can be liable for the injuries alleged by Plaintiff;

- How liability, if any, may be apportioned.

- Whether and the extent to which the Carpet Manufacturing Defendants are responsible for the damages that Dalton Utilities seeks pursuant to CERCLA;

- Whether and the extent to which the Carpet Manufacturing Defendants should be allocated fault for the damages Dalton Utilities seeks pursuant to its state law claims;

- Whether Dalton Utilities' claims are barred by the applicable statutes of limitations.

Daikin further asserts that as this Court has dismissed the CERCLA and state law nuisance and trespass claims against Daikin, no further legal issues remain to be tried as to Daikin on those claims.

(d)   *The cases listed below (include both style and action number) are:*

(1)   *Pending Related Cases:*

The parties state that the following cases are related in one or more aspects: *Johnson v. 3M Co., et al.*, No. 4:20-cv-00008 (N.D. Ga.); *Coosa River Basin Initiative v. 3M Co., et al.*, No. 4:25-cv-00075 (N.D. Ga.); *Federal Insurance Co., et al. v. Shaw Industries, Inc.*, No. 4:24-cv-00147 (N.D. Ga.).

3M states that it is not a party to *Federal Insurance Co., et al. v. Shaw Industries, Inc.*, No. 4:24-cv-00147 (N.D. Ga.) and takes no position about whether that case is related.

(2)   *Previously Adjudicated Related Cases:*

The parties state that the following previously adjudicated case is related in one or more aspects: *City of Rome v. 3M Co., et al.*, No. 19-cv-02405-JFL-003 (Ga. Super. Ct.).

**2.   This case IS complex because it possesses one or more of the features listed below (please check):**

  X   (1) Unusually large number of parties

  X   (2) Unusually large number of claims or defenses

   X    (3) Factual issues are exceptionally complex

   X    (4) Greater than normal volume of evidence

   X    (5) Extended discovery period is needed

   X    (6) Problems locating or preserving evidence

        (7) Pending parallel investigations or action by government

   X    (8) Multiple use of experts

   X  (9) Need for discovery outside United States boundaries (3M disagrees that discovery is needed outside of the United States.)

   X    (10) Existence of highly technical issues and proof

   X    (11) Unusually complex discovery of electronically stored information

**3.    Counsel:**

*The following individually named attorneys are hereby designated as lead counsel for the parties:*

Lindsey B. Mann (GA Bar No. 431819)
lindsey.mann@troutman.com
TROUTMAN PEPPER LOCKE LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308
404-885-3000
*Counsel for Plaintiff Dalton Utilities*

W. Larkin Radney, IV (admitted *pro hac vice*)
lradney@lightfootlaw.com
LIGHTFOOT, FRANKLIN AND WHITE LLC
The Clark Building 400 20th Street North
Birmingham, Alabama 35203
205-501-0700
*Counsel for Defendant 3M Company*

Andrew Carpenter (admitted *pro hac vice*)
acarpenter@shb.com
SHOOK HARDY & BACON, LLP
2555 Grand Boulevard
Kansas City, Missouri 64108
816-474-6550
*Counsel for Defendants EIDP, Inc. and The Chemours Company*

Jeffrey A. Kaplan, Jr. (GA Bar No. 859280)
jkaplan@jonesday.com
JONES DAY
1221 Peachtree Street NE, Suite 400
Atlanta, GA 30361
404-581-8502
*Counsel for Defendant Daikin America, Inc.*

Merideth S. Daly (admitted *pro hac vice*)
mdaly@hunton.com
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Riverfront Plaza, East Tower
Richmond, Virginia 23219
804-787-8087
*Counsel for Defendant INV Performance Services, LLC*

Jason Rottner (GA Bar No. 678137)
jason.rottner@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
404-881-7000
*Counsel for Defendant Aladdin Manufacturing Corporation*

Jennifer B. Dempsey (GA Bar. 217536)
jennifer.dempsey@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
One Atlantic Center – 14th Floor
1201 West Peachtree Street NW
Atlanta, Georgia 30309

404-572-6600

*Counsel for Defendants Shaw Industries, Inc. and Shaw Industries Group, Inc.*

**4.    Jurisdiction:**

*Is there any question regarding this Court's jurisdiction?*  No.

*If "yes," please attach a statement, not to exceed one page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.*

**5.    Parties to This Action:**

*(a)    The following persons are necessary parties who have not been joined:*

The parties are not aware of any necessary parties who have not been joined.

The parties anticipate third parties will be added through third party claims after discovery is conducted to identify those parties in accordance with the proposed schedule set forth below in Section 10.

*(b)    The following persons are improperly joined as parties:*

None known at this time.

*(c)    The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:*

None known at this time.

*(d)    The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.*

19

**6.      Amendments to the Pleadings:**

*Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15. Further instructions regarding amendments are contained in LR 15.*

(a)      *List separately any amendments to the pleadings that the parties anticipate will be necessary:*

The parties anticipate that amendments to the pleadings will be necessary to assert any counterclaims, crossclaims, and third party claims, and the parties have proposed a schedule for such amendments in Section 10 below.  The parties reserve the right to move to amend the pleadings and/or move to join additional parties in accordance with the proposed schedule set forth below and as permitted by the Federal Rules of Civil Procedure.

(b)      *Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.*

As set forth in response to 6(a), the parties have proposed a schedule for amended pleadings in Section 10 below.

**7.      Filing Times for Motions:**

*All motions should be filed as soon as possible.  The local rules set specific filing limits for some motions.  These times are restated below.*

*All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later.  Local Rule 7.1A(2).*

(a)   *Motions to Compel: before the close of discovery or within the extension period allowed in some instances.  Local Rule 37.1.*

(b)   *Summary Judgment Motions: within thirty days after the close of discovery, unless otherwise permitted by court order.  Local Rule 56.1.*

(c)   *Other Limited Motions: Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.*

(d)   *Motions Objecting to Expert Testimony: <u>Daubert</u> motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted.  Refer to Local Rule 7.2F.*

The parties have agreed on a proposed schedule, as set forth in Section 10.  To date, the parties have agreed to deadlines through the end of fact discovery.  Prior to the close of fact discovery, the parties will confer and submit a revised schedule for the remaining deadlines in the case, including expert discovery (which will not commence until 45 days after fact discovery ends), dispositive motions, motions specific to CERCLA-related issues, and other pre-trial deadlines.

## 8.   Initial Disclosures:

*The parties are required to serve initial disclosures in accordance with Fed. R. Civ. P. 26.  If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to Fed. R. Civ. P. 26(a)(1)(B).*

The parties will exchange initial disclosures on July 6, 2026.

## 9.   Request for Scheduling Conference:

*Does any party request a scheduling conference with the Court?  If so, please state the issues which could be addressed and the position of each party.*

The parties do not request a scheduling conference with the Court at this time.

**10.    Discovery Period:**

*The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint.  As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.*

*Cases in this Court are assigned to one of the following three discovery tracks: (a) zero month discovery period, (b) four months discovery period, and (c) eight months discovery period.  A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F.  The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.  Please state below the subjects on which discovery may be needed:*

As set forth below, the parties have agreed to the discovery period commencing on June 26, 2026.

For Plaintiff:

In addition to the some of the subjects identified by Defendants, Dalton Utilities expects discovery will be needed related to the following subjects, which is not intended as an exhaustive list:

- Defendants' purchases, sales, use, and disposal of PFAS and PFAS-containing waste and products;

- Defendants' waste practices, including the discharge of wastewater;

- Defendants' licensing and other agreements related to PFAS and PFAS-containing products in carpet manufacturing processes in Dalton, Georgia;

- Defendants' design, manufacture, research, and testing of PFAS and PFAS-containing products and Defendants' knowledge of their risks;

- The PFAS Manufacturing Defendants and Invista's control over and involvement in the operations, including wastewater disposal, of the Carpet Manufacturing Defendants; and

- Facts relevant to the equitable allocation of responsibility for response costs under CERCLA.

Dalton Utilities expects that additional areas of inquiry will arise as discovery progresses.

<u>For Carpet Manufacturing Defendants:</u>

In addition to some of the subjects identified by Dalton Utilities and the Supplier Defendants, the Carpet Manufacturing Defendants anticipate discovery will be needed related to the following subjects, which is not intended as an exhaustive list:

- Dalton Utilities' compliance with the applicable laws, regulations, and permits in treating the Carpet Manufacturing Defendants' wastewater;

- Dalton Utilities' compliance with the applicable laws, regulations, and permits in operating its business and applying wastewater to the LAS;

- Dalton Utilities' knowledge of PFAS and its presence in the Carpet Manufacturing Defendants' wastewater;

- The Carpet Manufacturing Defendants' permit applications and other disclosures to Dalton Utilities regarding the manufacturing processes in the carpet mills and the chemicals used during those processes;

- Any permit application or other disclosures to Dalton Utilities by the PFAS Manufacturing Defendants, including the products designed, manufactured, and sold by the PFAS Manufacturing Defendants and the processes for applying those products to carpet.

- Dalton Utilities' inspections of carpet mills as part of Dalton Utilities' wastewater pretreatment program and permitting regime;

- All industrial users who have sent PFAS-containing wastewater to Dalton Utilities;

- All non-industrial users who have sent PFAS-containing wastewater to Dalton Utilities;

- The PFAS Manufacturing Defendants' knowledge of the presence of PFAS within the products they designed, manufactured, or sold to the Carpet Manufacturing Defendants;

- The PFAS Manufacturing Defendants' knowledge of the persistent, bioaccumulative, and toxic properties potentially associated with PFAS;

- The PFAS Manufacturing Defendants' knowledge of the fate and transport properties of PFAS, including with respect to the LAS;

24

- The PFAS Manufacturing Defendants' disclosure (or non-disclosure) of the properties of PFAS to the Carpet Manufacturing Defendants;

- The PFAS Manufacturing Defendants' wastewater practices;

- Dalton Utilities' bases for seeking remediation of the LAS;

- Georgia EPD's role in the remediation of the LAS;

- The EPA's role in the remediation of the LAS; and

- The investigation and formulation of a plan to remediate, the plan to remediate, and cost for remediating the LAS.

The Carpet Manufacturing Defendants expect that additional areas of inquiry will arise as discovery progresses.

For the Supplier Defendants:

In addition to some of the subjects identified by Dalton Utilities and the Carpet Manufacturing Defendants above, the Supplier Defendants anticipate discovery will be needed related to the following subjects, which is not intended as an exhaustive list:

- PFAS sampling data conducted by or for Dalton Utilities;

- Other Dalton-area PFAS sampling data;

The claims and allegations against the Defendants.

For all parties: Please see below regarding the parties' requested discovery schedule.

*If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be*

25

*conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:*

This matter involves factual complexity which will require significant party and non-party discovery regarding topics ranging from liability, allocation of responsibility for response costs, damages, expert discovery, and more. Therefore, the parties request that the case be assigned to an extended discovery track, as described below. Moreover, the parties agree that a phased discovery schedule will be conducive to efficiency and allow the case to be managed appropriately. Phased discovery will also assist in avoiding burdening the Court with unnecessary or premature motion practices.

Subject to the Court's approval, the parties have agreed to a phased discovery plan that includes the following deadlines:

| **Event** | **Deadline** |
|---|---|
| Initial Disclosures | 07/06/2026 |
| Fact Discovery Phase 1 Begins | 06/26/2026 |
| File Crossclaims, Counterclaims, and Third Party Claims | 01/22/2027 |
| Fact Discovery Phase 2 Begins | 01/22/2027 |
| Responses to Crossclaims, Counterclaims, and Third Party Claims | 02/22/2027 |
| Responses to Motions to Dismiss Crossclaims, Counterclaims, and Third Party Claims | 03/24/2027 |
| Replies to Motions to Dismiss Crossclaims, Counterclaims, and Third Party Claims | 04/07/2027 |
| Fact Discovery Phase 3 Begins | 30 days following resolution of motions related to crossclaims, |

| | counterclaims, and third-party claims |
|---|---|
| Close of Fact Discovery | One year following the start of Fact Discovery Phase 3 |

<u>Fact Discovery Phase 1</u> (June 26, 2026, through January 22, 2027)

- Discovery will be limited as follows:

  o The parties will take discovery designed to identify other potentially responsible parties. The parties will coordinate in an effort to streamline discovery as to third parties.

  o The parties intend to re-produce certain discovery materials from other Georgia PFAS cases in this case. The parties will meet and confer regarding the scope of those productions and mechanisms to facilitate them.

  o The parties will participate in informal discussions, governed by Federal Rule of Evidence 408, regarding the status of cleanup activities for Dalton Utilities' POTW. Dalton Utilities has retained a CERCLA remediation expert to develop a comprehensive cleanup plan for the site, and their work began in 2025. The expert is currently conducting a number of activities to fully characterize the site so that a CERCLA-quality Remedial Investigation / Feasibility Study (RI/FS) can be prepared. The parties have agreed to a framework by which Dalton Utilities will

share with Defendants copies of site plans, reports, and data provided to EPA and/or EPD. Unless otherwise agreed, Dalton Utilities will provide these deliverables to Defendants within 15 days of providing them to EPA and/or EPD.

Fact Discovery Phase 2 (January 22, 2027 through resolution of motions filed in connection with crossclaims, counterclaims, and third-party claims):

- The parties will continue to engage in written discovery and document production during this phase, but the parties agree that no depositions will be taken until all initial motions regarding the crossclaims, counterclaims and third-party claims are resolved (to minimize duplication).

- To the extent a party wishes to take a deposition after the beginning of Fact Discovery Phase 2, but before the Court has ruled on any Rule 12 motions relating to crossclaims, counterclaims, and third-party claims, the parties agree to confer in good faith regarding the need for, and any appropriate limitations on, the deposition.

Fact Discovery Phase 3 (commences 30 days following resolution of all motions filed in connection with crossclaims, counterclaims, and third-party claims and concludes after 12 months)

- Following resolution of motions filed in connection with crossclaims, counterclaims, and third-party claims, all parties joined to the case will

confer regarding the need for additional discovery, including depositions.

- The fact discovery period will not close until at least 12 months following the commencement of Fact Discovery Phase 3.

- Thirty days before the conclusion of Fact Discovery Phase 3, the parties will confer and will submit a revised scheduling order that addresses expert discovery (which will not commence until 45 days after fact discovery closes), dispositive and Daubert motions, motions specific to CERCLA-related issues, and other pre-trial deadlines.

**11.  Discovery Limitation and Discovery of Electronically Stored Information:**

(a)  *What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?*

Given the complexity of issues and number of parties, it is possible that, proportional to the needs of this case, the parties may need to seek an amendment to the deposition and interrogatory limits set forth in the Federal Rules of Civil Procedure.  The parties will meet and confer about the need for any potential changes to the default limits set by the Federal Rules of Civil Procedure to ensure discovery proceeds in an orderly manner.

(b)  *Is any party seeking discovery of electronically stored information?*

  __X__ Yes  _____ No

29

*If "yes,"*

(1)    *The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:*

The parties will meet and confer regarding the collection, processing,

and production of electronically stored information ("ESI").

(2)    *The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:*

The parties will meet and confer regarding a protocol for conducting

ESI discovery, which will govern the format, method of production,

and other issues.

*In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.*

At this time, the parties agree that a scheduling conference regarding

ESI discovery is premature as they expect to agree on an ESI protocol

and a protective order, which they will submit for the Court's

consideration.  Should any areas of dispute arise that the parties cannot

resolve after conferring in good faith, the parties will bring the dispute

to the Court's attention.

**12.    Other Orders:**

*What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?*

As noted, the parties anticipate submitting for the Court's approval an agreed upon ESI protocol and an agreed upon protective order regarding the exchange of confidential information.  The parties also ask the Court to enter a case management order setting out discovery and other deadlines as outlined in the parties' joint proposed scheduling order.

**13.    Privileged or Protected Material:**

*Do the parties anticipate any issues about claims for privilege or of protection with respect to trial-preparation materials?*

___X___ Yes         _____ No

*If "yes,"*

*The parties have discussed their views and proposals on any such issues, including the timing and method for complying with Rule 26(b)(5)(A) and whether, if they agree on a procedure to assert the claims after production, to ask the Court to include their agreement in an order under Federal Rule of Evidence 502. The parties have agreed as follows:*

The parties anticipate addressing issues related to Federal Rule of Evidence 502(b) and Federal Rule of Civil Procedure 26(b)(5) in an agreed upon ESI protocol and/or an agreed upon protective order.

**14.    Settlement Potential:**

(a)    *Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on Monday, June 8, 2026, and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.*

**Plaintiff**

**Lead counsel (signature):** */s/ Lindsey B. Mann*

**Other participants:** T. Scott Mills

**Defendants**

**Lead counsel (3M) (signature):** */s/ W. Larkin Radney, IV*

**Lead counsel (DuPont) (signature):** */s/ Andrew Carpenter*

**Lead counsel (Daikin) (signature):** */s/ Jeffrey A. Kaplan, Jr.*

**Lead counsel (INV) (signature):** */s/ Merideth Daly*

**Lead counsel (Aladdin) (signature):** */s/ Jason Rottner*

**Lead counsel (Shaw) (signature):** */s/ Jennifer B. Dempsey*

(b)    *All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:*

**( __ )        A possibility of settlement before discovery.**

**( X )        A possibility of settlement after discovery.**

**( __ )        A possibility of settlement, but a conference with the judge is**

**needed.**

**( __ )        No possibility of settlement.**

(c)   Counsel (__X__) do or (____) *do not intend to hold additional settlement conferences among themselves prior to the close of discovery.  The proposed date of the next settlement conference is to be determined.*

(d)   *The following specific problems have created a hindrance to settlement of this case.*

None.  As set forth in Section 10, the parties have agreed to participate in informal discussions, governed by Federal Rule of Evidence 408, regarding the status of the remedy selection for Dalton Utilities' POTW.  These discussions will coincide with the deliverables developed by Dalton Utilities' CERCLA remediation expert.

**15.   Trial by Magistrate Judge:**

*Note: Trial before a Magistrate Judge will be by jury trial if a party is otherwise entitled to a jury trial.*

The parties do not consent to having this case tried before a magistrate judge of this Court.

Respectfully submitted, this 26th day of June, 2026.

**TROUTMAN PEPPER LOCKE LLP**

/s/ *Lindsey B. Mann*

Lindsey B. Mann (GA Bar No. 431819)
lindsey.mann@troutman.com
E. Fitzgerald Veira (GA Bar No. 726726)
fitzgerald.veira@troutman.com
T. Scott Mills (GA Bar No. 757063)
scott.mills@troutman.com
Anaid Reyes-Kipp (GA Bar No. 703283)
anaid.reyes-kipp@troutman.com

33

600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308
404-885-3000

Brooks M. Smith (admitted *pro hac vice*)
brooks.smith@troutman.com
1001 Haxall Point, Suite 1500
Richmond, VA 23219
804-697-1200

James W. Beers, Jr. (admitted *pro hac vice*)
james.beers@troutman.com
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004
202-274-2950

*Counsel for Plaintiff the City of Dalton,*
*Georgia, acting through its Board of Water,*
*Light and Sinking Fund Commissioners,*
*d/b/a Dalton Utilities*

| | |
|---|---|
| */s/ Jeffrey A. Kaplan, Jr.* | */s/ Nia S. Wilson* |
| James L. Hollis (GA Bar 930998) | Nia S. Wilson (GA Bar 914011) |
| Caroline Suydam (GA Bar 312378) | nwilson@shb.com |
| BALCH & BINGHAM LLP | Caroline Gieser (GA Bar 167916) |
| 30 Ivan Allen Jr. Blvd, N.W., Suite 700 | cgieser@shb.com |
| Atlanta, GA 30309 | Shook Hardy & Bacon, LLP |
| T: (404) 261-6020 | 1230 Peachtree Street, Suite 1200 |
| jhollis@balch.com | Atlanta, GA 30309 |
| csuydam@balch.com | T: 470-867-6000 |
| | |
| David E. Nahmias (GA Bar 534106) | Andrew Carpenter (*pro hac vice*) |
| Jeffrey A. Kaplan, Jr. (GA Bar 859280) | acarpenter@shb.com |
| JONES DAY | Brent Dwerlkotte (*pro hac vice*) |
| 1221 Peachtree Street NE, Suite 400 | dbdwerlkotte@shb.com |
| Atlanta, GA 30361 | Andre Tinoco (*pro hac vice*) |
| T: (404) 581-8502 | atinoco@shb.com |
| dnahmias@jonesday.com | Christopher Sorenson (*pro hac vice*) |

34

jkaplan@jonesday.com

Steven N. Geise (*pro hac vice* application pending)
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121
T: (858) 314-1170
sngeise@jonesday.com

*Counsel for Defendant*
*Daikin America, Inc.*

/s/ *Alexandra B. Cunningham*
Alexandra B. Cunningham
(GA Bar 096280)
Merideth S. Daly (*pro hac vice*)
Hunton Andrews Kurth LLP
951 E. Byrd Street
Riverfront Plaza, East Tower
Richmond, VA 23219
T: (804) 787-8087
T: (804) 788-8645
acunningham@hunton.com
mdaly@hunton.com

Laura T. Wagner (GA Bar 674911)
Hunton Andrews Kurth LLP
Bank of America Plaza, Suite 4100
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
T: (404) 888-4117
lwagner@hunton.com

*Attorneys for Defendant INV*
*Performance Surfaces, LLC*

/s/ *Jason Rottner*
Jason Rottner (GA Bar 678137)

csorenson@shb.com
Zachary Beach (*pro hac vice*)
zbeach@shb.com
Shook Hardy & Bacon, LLP
2555 Grand Blvd.
Kansas City, MO 64108
T: 816-474-6550

*Counsel for EIDP, Inc. and The*
*Chemours Company*

/s/ *Jackson R. Sharman, III*
Jackson R. Sharman, III
(GA Bar 637930)
M. Christian King (*Pro Hac Vice*)
Harlan I. Prater, IV (*Pro Hac Vice*)
W. Larkin Radney, IV (*Pro Hac Vice*)
Lightfoot, Franklin and White LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
T: (205) 581-0700
jsharman@lightfootlaw.com
cking@lightfootlaw.com
hprater@lightfootlaw.com
lradney@lightfootlaw.com

Billie B. Pritchard (GA Bar 460789)
King & Spalding, LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
T: (404) 572-4600
bpritchard@kslaw.com

Lindsey C. Boney, IV (*Pro Hac Vice*)
Bradley Arant Boult Cummings LLP
One Federal Place

William J. Repko III (GA Bar 301797)
Jamie George (GA Bar 911331)
Andrew A. Roberts (GA Bar 425333)
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, GA 30309
T: 404-881-7000
jason.rottner@alston.com
jay.repko@alston.com
jamie.george@alston.com
andrew.roberts@alston.com

*Counsel for Defendant Aladdin Manufacturing Corporation*

/s/ Jennifer B. Dempsey
Jennifer B. Dempsey (GA Bar 217536)
jennifer.dempsey@bclplaw.com
Elizabeth Blackwell (*pro hac vice)*
Liz.Blackwell@bclplaw.com
Michael P. Carey (GA Bar 109364)
michael.carey@bclplaw.com
BRYAN CAVE LEIGHTON
PAISNER LLP
One Atlantic Center – 14th Floor
1201 West Peachtree Street NW
Atlanta, GA 30309
T: (404) 572-6600

*Counsel for Defendants Shaw Industries, Inc. and Shaw Industries Group, Inc.*

1819 Fifth Avenue North
Birmingham, AL 35209
T: (205) 521-8914
lboney@kslaw.com

*Counsel for Defendant 3M Company*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 26th day of June, 2026.

/s/ Lindsey B. Mann
Lindsey B. Mann
lindsey.mann@troutman.com
Georgia Bar No. 431819